**UNITED STATES of America, Appellee,**

v.

**John DOE, Defendant–Appellant.**

**No. 992, Docket 95–1470.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 16, 1996.

Decided March 22, 1996.

**1310**

Emily Berger, Assistant United States Attorney, Brooklyn, New York (Zachary W. Carter, United States Attorney for the Eastern District of New York, Faith E. Gay, Assistant United States Attorney, Brooklyn, New York, on the brief), for Appellee.

Vivian Shevitz, Mount Kisco, New York (Carol E. Gette, on the brief), for Defendant–Appellant.

Before: KEARSE, WALKER, and HEANEY *, Circuit Judges.

*Honorable Gerald W. Heaney, of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

KEARSE, Circuit Judge:

Defendant, an accountant convicted of aiding and abetting the preparation and filing of a false income tax return, in violation of 26 U.S.C. § 7206(2) (1994), appeals from a post-judgment order of the United States District Court for the Eastern District of New York, Thomas C. Platt, *Judge*, requiring him, as a condition of the probation imposed in his judgment of conviction, to notify his tax-preparation clients of his conviction. On appeal, defendant contends principally that the notification condition constitutes an occupational restriction that is not reasonably necessary to protect the public. For the reasons that follow, we vacate the order of the district court and remand for reconsideration.

## I. BACKGROUND

The events prior to entry of the April 28, 1995 judgment of conviction are not in dispute. The questions raised by the present appeal principally concern the meanings and propriety of certain postjudgment instructions by the court.

### A. *The Events Through April 28, 1995*

Defendant, referred to as John Doe for purposes of this opinion, is an attorney and an accountant, though not a certified public accountant. Prior to December 1990, he was employed as a tax return preparer by a New York City accounting firm that came under investigation by the Internal Revenue Service ("IRS") for preparation of fraudulent income tax returns. The presentence report ("PSR") prepared on Doe by the Probation Department stated that, according to the government, the firm's partners instructed its staff accountants preparing tax returns to, *inter alia*, overstate the value of miscellaneous deductions and claim undocumented deductions without regard to accuracy.

In 1988, Doe prepared and filed, for one of the firm's clients, a tax return that falsely claimed deductions of $2,763. Doe's act came to the IRS's attention in 1989. In 1990,

Doe began cooperating with the government, left the firm, and opened his own office. Doe's cooperation led to the conviction, following a plea of guilty, of one of the firm's partners.

Doe himself pleaded guilty in March 1994 to one count of aiding and abetting the preparation and filing of a false income tax return. At the plea hearing, the court asked, "Do you understand that you face a possible loss of your license to practice law or accounting?" Doe answered affirmatively. (Plea Hearing Transcript, March 18, 1994, at 12–13.)

The statutory maximum prison term for Doe's offense was three years. Because Doe had no criminal history points as calculated under the federal Sentencing Guidelines ("Guidelines"), the applicable Guidelines range of imprisonment was 0–6 months, and he was eligible to be sentenced to one-to-five years' probation rather than imprisonment. The government moved pursuant to Guidelines § 5K1.1 for a downward departure from the Guidelines range in light of Doe's substantial assistance to the government in its investigation.

Doe was sentenced some 13 months later. At the sentencing hearing, Doe's attorney Jeffrey C. Hoffman urged the court to be lenient, noting that Doe was sure to be suspended from the practice of law as a result of his conviction, and that as a matter of policy in grievance matters before New York State's Appellate Division, that suspension would not be shorter than his federal period of probation. The court responded as follows:

> I am fully aware of, Mr. Hoffman, what the Appellate Division does in a great many cases with respect to probation. The argument is made to me where attorneys are brought before me for sentencing for wrongdoings that I shouldn't put them on probation because they will be disbarred or suspended. My answer to it is they are lucky they are not going to be incarcerated for the full three years prior to them being able to walk the streets. They shouldn't be arguing on the issue of whether or not they will be able to practice

law, when they themselves have disqualified themselves.

> 18 months probation. $5,000 cost of supervision. A $5,000 fine. A $50 special assessments fine and cost of supervision and the special assessment.

(Sentencing Transcript, April 28, 1995, at 5–6.) The court did not mention any particular condition of probation.

The written judgment entered on April 28, 1995, included the following preprinted provision:

> While the defendant is on probation pursuant to this judgment, . . . .

> . . . .

> 13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

On the same day, Doe signed a form entitled "Conditions of Probation and Supervised Release" (the "Probation Form") that stated "[i]t is the order of the Court that you shall comply with the following standard conditions" (Probation Form at 1), and contained, as its ¶ 14, the same third-party notification language as ¶ 13 of the judgment, substituting only "you" and "your," respectively, for "the defendant" and "the defendant's" (*id.* at 2).

## B. *The Events Subsequent to Sentencing*

For approximately six weeks after he was sentenced, Doe was under the supervision of the Probation Office in the Eastern District of New York ("EDNY"). The EDNY Probation Office did not require Doe to notify his accounting clients of his conviction. However, since Doe resided within the Southern District of New York ("SDNY"), supervision was to be transferred to the SDNY Probation Office. The latter office raised a question as to whether Doe should be required to give such notification to his clients. By letter dated June 1, 1995, Hoffman wrote to the EDNY Probation Office to urge that the notification requirement not be imposed.

Hoffman pointed out that, as the United States Attorney's Office was aware, Doe had commenced his own tax-preparation service in 1990, that he had been under the auspices of that Office for some 4½ years, and that there had been no complaints about his conduct during that time. Hoffman stated that Doe's clientele had remained relatively static during that period and that the imposition of the client-notification requirement "would result in the crippling, if not the total destruction, of his business." (Hoffman letter to EDNY Probation Office dated June 1, 1995 ("Hoffman June 1 Letter"), at 2.)

As a result of Hoffman's letter, the EDNY Probation Office sent a memorandum to the district judge, stating that the SDNY Probation Office had "advised that they will accept supervision after the issue of third party risk has been resolved." (Memorandum from U.S. Probation Officer James M. Stein & Supervising U.S. Probation Officer Laurence Meyerson to the district judge dated June 9, 1995 ("Probation Office June 9 Memorandum"), at 1.) The memorandum enclosed the Hoffman June 1 Letter and agreed with it, stating, in part, that the EDNY Probation Office viewed it as "unlikely that Mr. [Doe] will again involve himself in criminal activity," and that though third-party notification is often desirable, "an exception" should be made here (Probation Office June 9 Memorandum at 1):

> The purpose of this memorandum is to request Your Honor's decision regarding Mr. [Doe's] continued employment as a public accountant since it can be construed as a third party risk due to his conviction in [sic] the instant offense. It is noted that the offender is not a Certified Public Accountant and consequently he is not required to be licensed as a Public Accountant by the State of New York. In regard to the third party risk issue, the probationer's attorney ... has submitted a letter wherein he candidly outlines the reasons why the probationer should be permitted to continue to be employed as a public accountant and the adverse effects it would have if the probationer was [sic] required to advise his clientele of his tax law conviction.

It is clear that Mr. [Doe's] employment as a public accountant represents a third party risk and the conditions of probation which were reviewed and signed by him on April 28, 1995, specifically states [sic], "... as directed by the probation officer, you shall notify third-parties of risks that may be occasioned by your criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm your compliance with such notification requirement."

> *The Probation Department in the Eastern District of New York has carefully and thoroughly reviewed all factors in this case and is of the opinion that it is unlikely that Mr. [Doe] will again involve himself in criminal activity....* The issue of third party risk is considered an extremely important matter and its importance should never be undermined. However, *in this instance, the undersigned officer believes and respectfully recommends that an exception to the third party risk issue be made and the probationer should be given the opportunity to continue employment as a public accountant and not advise his clients of his conviction on the instant offense* for reasons outlined in Mr. Hoffman's recent correspondence.

(Probation Office June 9 Memorandum at 1–2 (emphasis added).) The memorandum stated that if the court concurred in the EDNY Probation Office's recommendation, Doe would provide a list of his clients to the SDNY Probation Office, which would monitor his employment conduct closely.

The last page of the memorandum contained two alternative signature lines for the court, one opposite the inscription, "Notify Clients of Federal Tax Conviction" and the other opposite the inscription, "Not Necessary to Notify Clients of Federal Tax Conviction." On June 12, 1995, the district judge signed the line requiring notification.

By letter dated June 23, 1995, the SDNY Probation Office wrote to Doe, referring "to [the district] Judge['s] order, dated June 12, 1995, directing you to notify all clients of your federal tax conviction," and instructing Doe that

[u]ntil such time that there is any change or reversal of [the district] Judge['s] order, you are reminded of your obligation to comply with this notification requirement.

(Letter from Supervising U.S. Probation Officer Daniel J. Sheridan and U.S. Probation Officer Carol Dray to Doe dated June 23, 1995 ("Probation Office June 23 Letter").)

On July 21, 1995, with the support of the government, Hoffman asked the court to reconsider its notification requirement, stating that that requirement was a severe occupational restriction: "To require [Doe] to make his customers aware of his conviction will effectively put him out of business. His business is very competitive, and it is relatively simple for his clients to switch tax preparers." (Hoffman letter to the district judge dated July 21, 1995 ("Hoffman July 21 Letter"), at 2.) "Such notification would effectively end Mr. [Doe's] business, resulting in economic disaster for himself, his wife and his two children." (*Id.* at 1.)

Hoffman pointed out that the Sentencing Guidelines state that the imposition of an occupational restriction should be " 'for the **minimum** time and to the **minimum** extent necessary to protect the public' " from the continuation of unlawful conduct similar to that for which the defendant was convicted. (*Id.*) (quoting Guidelines § 5F1.5) (emphasis in letter). Hoffman quoted legislative history that stated that an occupational restriction " 'should only be used as reasonably necessary to protect the public. It should not be used as a means of punishing the convicted person.' " (Hoffman July 21 Letter at 1 (quoting S.Rep. No. 225, 98th Cong., 1st Sess. 96 (emphasis in letter))).

Hoffman argued that because Doe had conducted himself properly for some four years, the notification condition was not necessary. As support for the lack of need, Hoffman cited the EDNY Probation Office's view, as set forth in its June 9 Memorandum, that the risk to third parties of any further impropriety on Doe's part was minimal. He also attached a copy of a July 20, 1995 letter from the government to the court, supporting Doe's request to be allowed not to notify his clients of his conviction. The July 20, 1995 letter from Assistant United States Attorney Gordon Mehler to the district judge ("Government's July 20 Letter") endorsed the EDNY Probation Office's view that the risk to third parties was minimal, stating that the government believed Doe would "not ... ever counsel another client" to file a false tax return:

> I write to inform the Court that the government has no objection to the Court granting the defendant's request to delete the requirement that he notify his accounting clients of his tax conviction and probationary status. In taking this position, I have consulted with [the] Assistant U.S. Attorney ... who handled the ... case.
>
> Mr. [Doe] cooperated fully and seems to be genuinely remorseful. His cooperation continued for four years during which time he committed no further crimes. *We do not believe he will ever counsel another client to provide false information on tax returns. Thus, we agree with the Probation Department that the risk to third parties is minimal.*

(Government's July 20 Letter at 1 (emphasis added).)

In a July 27, 1995 endorsement ("July 27 Order"), the court rejected Doe's request:

> Motion for reconsideration granted[.] On reconsideration the Court adheres to its provision that Mr. [Doe] notify his clients of his conviction so long as he engages in this position of a tax preparer.

July 27 Order. The EDNY Probation Office promptly informed Hoffman that "after consideration ... the Court has decided to adhere to its provision that Mr. [Doe] notify his clients of his instant conviction so long as he engages in his tax preparation business." (Letter from Supervising U.S. Probation Officer Alfred R. D'Anca to Hoffman dated July 28, 1995, at 1 ("Probation Office July 28 Letter").)

Doe continued to object to the requirement and retained new counsel, Vivian Shevitz. By letter dated August 3, 1995, Shevitz made another attempt to have the court eliminate the client-notification requirement, and requested, alternatively, that the court grant a stay pending appeal. Her letter argued not

only that the occupational restriction was unnecessary for the reasons stated in the Probation Office's June 9 Memorandum and the Government's July 20 Letter, but also that because the court had not announced the client-notification condition at sentencing, the court's subsequent orders constituted either an impermissible imposition of more onerous sentencing terms or an impermissible delegation of power to the Probation Office. Shevitz's letter stated in part as follows:

I have just been retained by [John Doe] for the purposes of appealing Your Honor's order requiring that, as a condition of probation, Mr. [Doe] must notify his clients of his conviction "so long as he engages in this position of a tax preparer." I write to respectfully ask Your Honor for a stay of this provision pending appeal, as required by Rule 8 of the Federal Rules of Appellate Procedure.

As I am sure you understand, the consequences to my client of complying with this directive are great: he stands to lose *all* of his business because of normal human reactions to such information. Before he is required to take the step that will have such a consequence, he should be able to obtain appellate review.

. . . .

Further as to the merits, I must add that I believe that there was no basis to impose a notification requirement that was not ordered at sentencing. Your Honor did not impose this condition of probation on the defendant at the sentencing. The law provides that an oral pronouncement of sentence cannot be "modified" by the later addition of more onerous terms. *See United States v. Carbone,* 739 F.2d 45,[ ]47 (2d Cir.1984).

While the probation notification states that at the direction of the probation officer, a condition of this nature *may* be imposed, the Court of Appeals has held it unlawful for a district judge to delegate to the probation department "post-sentencing" decisions, which then cannot be appealed and may be imposed without reason. *See United States v. Porter,* 41 F.3d 68, 71 (2d Cir.1994) (court cannot authorize a probation officer to make post-sentencing

decisions about amount or scheduling of restitution payments).

The matter of notifying clients of a criminal conviction obviously has consequences as serious as those flowing from the payment of restitution. If an order to notify was to be made, the court was required to make it at the time of sentencing.

. . . .

With due respect, I believe that Your Honor's apparent directive to the probation officer upon inquiry about *whether* to impose this requirement was ill-considered. As the government agreed, there is, simply, no real need to require Mr. [Doe] to suffer the consequences of such an order—consequences that will reach far greater than a fine. If this court will not itself reconsider (on a *renewed* basis) and vacate your directive, I ask at least that Your Honor grant a stay pending appeal.

(Shevitz letter to the district judge dated August 3, 1995 ("Shevitz Letter"), at 1–3 (emphases in original).) Shevitz requested a prompt decision so that Doe could obtain appellate review "before being required to take action that will irreparably harm his ability to continue his business." (*Id.* at 3.)

Following the Shevitz Letter, the EDNY Probation Office sent the court a memorandum dated August 11, 1995, to "address[ ] the issue of third party risk, in terms of the degree of discretion afforded the probation department in requiring disclosure of information." (Memorandum from Supervising U.S. Probation Officer Alfred R. D'Anca to the district judge dated August 11, 1995 ("Probation Office August 11 Memorandum"), at 1.) After recapitulating the events, including the EDNY Probation Office's submission of its June 9 Memorandum, "[i]n response [to which], Your Honor directed that the probationer must notify his clients of his instant tax conviction" (Probation Office August 11 Memorandum at 1), the August 11 memorandum described the Probation Department's standard procedures as follows:

Based on their duty to protect the public, probation officers are instructed to warn third parties against whom there is a reasonable risk of harm from a person under supervision. (*Guide to Judiciary*

*Policies and Procedures,* Vol. X[,] Chapter 4, Section 4302 (Probation Manual))

In this regard, based on Policy Statement 5B1.4 and the policy· of the U.S. Probation Department, the condition of supervision governing third party risk is a mandatory, standard condition of probation, stated in Probation Form 7A (Conditions of Probation and Supervised Release) as condition 13, which was signed by the probationer on April 28, 1995:

> As directed by the probation officer, you shall notify third parties of risks that may be occasioned by your criminal record as [*sic*] personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm your compliance with such notification requirement.

It should be noted that the Office of General Counsel has provided standards for disclosure of information concerning third party risk in probation cases. More specifically, the disclosure of information is *selective,* (i.e., warning is not required in every case, only where a reasonably foreseeable risk of harm to a specific third party is believed to exist). Further, only when a probationer is unwilling to comply with the disclosure requirement, is it necessary for the Court to impose occupational restriction [*sic*] or disclosure of information to an employer or specified third party as a formal *special* condition of supervision. (cf[.] *Guide to Judiciary Polices and Procedure[s], supra* ).

In summary, then, if the probation officer decides to preclude a probationer from a particular job or type of employment, *and* the probationer is unwilling to comply, the officer should request the Court to hold a hearing to determine whether disclosure of information is required in this case, and, if so, to modify the conditions of supervision, per Rule 32.1(b), *Federal Rules of Criminal Procedure.*

Based on the foregoing, the memorandum previously submitted by the probation department, which addresses the issue of third party risk and was signed by Your Honor, is deemed to have served as clarification (rather than as an order) to reinforce the directive of the probation officer. [*Sic.*]

(Probation Office August 11 Memorandum at 2 (emphases in original).)

On August 17, 1995, after learning that the district judge was away and would not be able to rule on the August 3 stay motion for some time, Doe moved ·in this Court for a stay pending appeal. The stay was consented to by the government and was granted by this Court on September 5, 1995.

Three days later, in an Opinion dated September 8, 1995 ("September 8 Opinion"), the district court denied Doe any relief. The court took the position, *inter alia,* ·that Doe was required to notify his clients not because of any order of the court, but because the Probation Office had ordered him to do so (with the court's "advice") and/or because Doe had .agreed to that condition:

> By letter dated August 3, 1995, new counsel for defendant (probationer) [John Doe], asks for a stay during the appeal of this Court's alleged "order requiring, that as a condition of probation, Mr. [Doe] must notify his clients of his 'conviction so long as he engages in this position of a tax preparer' ".
>
> . . . .
>
> At the time of his offense, the defendant was working for an accounting firm as an accountant/tax preparer, .but he is not, and never has been, a certified public accountant nor has he been licensed as an accountant by the State of New York. He has been suspended from practicing law by. the Appellate Division, Second Department.

Immediately following his sentence, defendant (a lawyer himself and presumably with the advice and consent of his then counsel) signed a condition of his probation which provided:

> "As directed by the probation officer, you shall notify third parties of risks that may be occasioned by your criminal record as [*sic*] personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm your compliance with such notification require-

ment." (Condition of Probation Form 7A)

While a probation officer initially advised the Court on June 12 [*sic*], 1995, that he recommended that "an exception should be made" in defendant's case with respect to the notification requirement, he at the same time stated:

> "It is clear that Mr. [Doe's] employment as a public accountant represents a third party risk ..."

and sought this Court's decision on whether we agreed or disagreed with his recommendation.

More recently Supervising U.S. Probation Officer, for this District, Alfred R. D'Anca, in a memorandum dated August 11, 1995, advised that:

> Based on the probation officer's duty to protect the public, probation officers are instructed to warn third parties against whom there is a reasonable risk of harm from a person under supervision (Guide to Judiciary Policies and Procedures, Vol. X, Chapter 4, Section 4302 (Probation Manual)).

On August 8th, 1995, defendant objected, when requested by a probation officer, to notify his "clients" of his instant conviction, and the defendant "has continued to object to the obligation to notify his clients in this matter" and "the memorandum previously submitted by the Probation Department which addresses the issue of third party risk and was signed by Your Honor, is deemed to have served as clarification (rather than an order) to reinforce the directive of the Probation Office." [*Sic.*]

In short, it appears that the Probation Department in this District has changed its position from June 9th and now believes that it has a duty to protect the public by notification as set forth in the Guide and Probation Manual, *supra*, and in accordance with the defendant's written agreement which he now seeks to repudiate....

Under the Sentencing Guidelines the U.S. Attorneys throughout the country have effectively usurped virtually all of the sentencing powers which traditionally were vested under the Constitution in the federal judiciary. They are given the power, for example, to reward and/or extract cooperation from defendants with a promise of obtaining downward departures from the Guidelines in exchange[ ] therefor. In this case, they appear to be attempting to extend that power into providing "exceptions" to the standard operating conditions of the Probation Department applicable to all defendants.

Defendants, such as the defendant in this case, never seem to appreciate the "breaks" that are given to them in terms of avoidance of incarceration, relatively short term [*sic*] of probation, etc. and invariably start an assault on their lenient sentences requesting relief from fines, costs, restrictions on their travel for pleasure to Europe, Florida, etc. without first paying fines, and relief from other conditions such as the one in question here.

One of the reasons for the imposition of a jail sentence called for by this statute is to "incapacitate" a defendant from committing further crimes of the nature for which he was convicted, in order to "protect the public." In order to enable the Court not to imprison a defendant for this purpose one of the standard conditions of probation is to obtain a defendant's agreement to protect the public from any possibility that they might be deceived by a defendant a second time. To this Court this seems to be a small price to pay to avoid a period of incarceration and a substantial benefit to the public to insure that it does not in [*sic*] any further risk, at least, for the period of probation, which ... could have been as much as five years within the Guidelines.

Nonetheless, defense counsel argues that this Court has imposed a "draconian" condition as part of its sentence and that it is "unlawful" for the Court to "modify" its sentence after the event and to delegate to the Probation Department a post-sentence decision which may be imposed "without reason." As indicated above, these charges are uncalled for, unwarranted, unseemly and almost contemptuous, particularly in the light of her lawyer[-]client's written agreement herein. On the basis thereof, defense counsel also asks for a

stay pending an appeal from a non-existent order (as distinguished from advice given to the Probation Department) "modifying" the Court's sentence.

Defendant (heretofore noted to be a lawyer) has agreed in writing to obey the condition of probation; the Court expects him to live up to his agreement, and the Court will not give him any extension of time not to do so.

September 8 Opinion at 1–7.

The stay granted by this Court on September 5, 1995, remains in effect.

## II. DISCUSSION

On appeal, Doe challenges the client-notification requirement principally on the ground that there is no evidence in the record showing a reasonable need for such a requirement. He also contends that the court either improperly imposed that requirement without making a finding that there is such a need, or improperly delegated its authority to impose such a condition to the Probation Office. Given the sentencing framework established in 18 U.S.C. § 3551 et seq. (1994), his contentions are not without merit.

### A. *The Provenance of the Notification Requirement*

As an initial matter, we have substantial difficulty with the district court's stance in its September 8 Opinion that the notification requirement imposed on Doe was not imposed by the court. While in that opinion the court stated that counsel sought to appeal from what the court described as an "alleged 'order,'" and as "a non-existent order," the notification requirement had plainly been treated as an order of the court both by the Probation Office and by the court itself.

For example, the EDNY Probation Office's initial memorandum to the court, "request[ed] Your Honor's *decision*" (Probation Office June 9 Memorandum at 1 (emphasis added)); the court on June 12 signed the line that said "Notify Clients of Federal Tax Conviction"; and the SDNY Probation Office notified Doe of "[the district] *Judge* ['s] *order*, dated June 12, 1995, *directing you* to notify all clients of your federal tax convic-

tion," and instructed Doe that he must comply "[u]ntil such time that there is any change or reversal of [the district] *Judge* ['s] *order*" (Probation Office June 23 Letter at 1 (emphasis added)). On reconsideration, the court stated that "*the Court adheres to its* provision" that Mr. Doe notify his clients. July 27 Order (emphasis added). On the following day, the EDNY Probation Office reported to Hoffman that "*the Court has decided to adhere to its* provision that Mr. [Doe] notify his clients of his instant conviction so long as he engages in his tax preparation business." (Probation Office July 28 Letter at 1 (emphasis added).) And notwithstanding that the EDNY Probation Office's August 11 Memorandum to the district court ended with the opaque statement that something (which grammatically, though not logically, would be the Probation Office June 9 Memorandum) was "deemed to have served as clarification (rather than as an order)" (Probation Office August 11 Memorandum at 2), the August 11 Memorandum early stated expressly that "[i]n response" to the June 9 Memorandum, "*Your Honor directed that the probationer must notify his clients* of his instant tax conviction." (Probation Office August 11 Memorandum at 1 (emphasis added)).

We think it clear that the requirement that Doe notify his clients was imposed by the court on June 12 when it signed opposite the line that provided that Doe was to "Notify Clients of Federal Tax Conviction," and that the requirement was reaffirmed by the court's July 27 Order, which stated that "[o]n reconsideration the Court adheres to its provision that Mr. [Doe] notify his clients of his conviction so long as he engages in this position of a tax preparer."

■ To the extent that the court ruled in its September 8 Opinion that its prior endorsements did not constitute orders because Doe had "agreed" to the requirement that he notify his clients of his conviction, that finding is clearly erroneous. There was no mention of such a requirement in the PSR, and at the sentencing hearing Doe was not asked whether he agreed to such a requirement, and there was no mention of such a requirement. Although both the judgment entered

by the court and the Probation Form signed by Doe contained a preprinted paragraph referring to notification of third parties, that paragraph was not categorical. It stated that the defendant shall give notification "[a]s directed by the probation officer" as to risks that "may" be occasioned. (Probation Form at 2 (emphasis added).) The language of this provision does not state that a notification requirement is imposed automatically.

Further, the probation guidelines promulgated by the Administrative Office of the Courts make it clear beyond peradventure that a notification direction is not automatic. *See* vol. X, Administrative Office of the Courts, *Guide to Judiciary Policies and Procedures, Probation Manual* at 36–38 (1992) ("Probation Manual" or "Manual"). The Manual, referred to in both the Probation Office August 11 Memorandum and the district court's September 8 Opinion, states explicitly that decisions as to whether third parties should be notified are to be made on a case-by-case basis:

> Probation officers have an equal obligation to control risk to the public and provide correctional treatment to the offender. In meeting these obligations, the officer has a duty to warn *specific* third parties of a *particular* prospect of harm, *physical* or *financial,* which the officer "reasonably foresees" the offender may pose to them. . . .

The Office of General Counsel has provided standards for disclosure of information concerning risk in probation and supervised release cases as follows:

> . . . .
>
> B. Guidelines for disclosure of third party risk information are *selective.* A warning is *not* required in every case, *only* where a *reasonably foreseeable* risk of harm to a *specific* third party is believed to exist.
>
> . . . .
>
> D. A disclosure requirement must be reasonably related to the correctional treatment of the offender and/or the protection of the public.
>
> (1) *Determination of Risk.*

> The determination of whether a "reasonably foreseeable" risk exists depends upon a selective, case-by-case evaluation. Among other factors, the evaluation should be based upon the offender's employment, offense, prior criminal background, and conduct. The officer should pay special attention to employment or other circumstances which present the offender with an opportunity or temptation to engage in criminal or antisocial behavior related to the offender's criminal background.
>
> (2) *"Reasonably Foreseeable" Risk.*
>
> "Reasonably foreseeable" risk means the circumstances of the relationship between the offender and the third party (e.g., employer and employee) suggest the offender may engage in a criminal or antisocial manner *similar* or *related* to past conduct.
>
> (3) *Making Disclosure Decisions.*
>
> (a) If the probation officer determines *no* reasonably foreseeable risk exists, then *no* warning should be given.

(Probation Manual at 36–37 (emphases in original).)

The Probation Manual further notes that if there is to be a condition that requires a probationer to "refrain from engaging in a particular type of employment or inform his employer or another specified third party about his criminal conviction," that condition is one that "should generally be imposed by the court as a formal special condition of probation." (*Id.* at 37.) The Manual states that if the probation officer decides that notification is warranted and the probationer objects, "the officer should present the matter to the court and request either an order directing the officer to make the warning or a modification hearing to impose a condition that the offender make the necessary disclosure." (*Id.* at 38.)

Thus, though the third-party-notification "as directed" language is undoubtedly a standard part of the Probation Form, the Manual guidelines quoted above, which (a) require "*selective*" disclosure and "case-by-case eval-

uation" as to whether a risk is " 'reasonably foreseeable,' " (b) state expressly that "[a] warning is *not* required in every case, *only* where a *reasonably foreseeable* risk of harm to a *specific* third party is believed to exist" (*id.* at 36–37 (emphases in original)), and (c) instruct probation officers to "request" a court "order" or a *"modification* hearing" if the probationer objects, *id.* at 38 (emphasis added), make it clear that the language of the Probation Form was not meant by the Probation Department or the Administrative Office of the Courts to make third-party notification automatic. Since the Form itself was not intended by the Probation Department to make notification automatic, Doe's signing of the Form could not constitute an agreement to notification.

▪ Finally, if we were to conclude that the district court did not order the notification but merely gave the Probation Office "advice," *see* September 8 Opinion at 6 ("defense counsel also asks for a stay pending an appeal from a non-existent order (as distinguished from advice given to the Probation Department)"), we would conclude that the court impermissibly delegated its authority to the Probation Office. Plainly the requirement that Doe notify his tax-preparation clients of his tax-related conviction was a substantial occupational restriction. The Probation Office stated in its initial post-judgment memorandum to the court that it was "request[ing] Your Honor's decision regarding Mr. [Doe's] continued employment as a public accountant" (Probation Office June 9 Memorandum at 1), and it concluded with the recommendation that no notification requirement be imposed in order that Doe "be given the opportunity to continue employment as a public accountant" (*id.* at 2). Equally plainly, the decision whether to impose an occupational restriction is entrusted ultimately not to the Probation Department but to the court. *See, e.g.* 18 U.S.C. § 3562(a) (*"[t]he court,* in determining ... conditions of probation," shall consider the applicable sentencing factors set out § 3553(a) (emphasis added)); 18 U.S.C. § 3601 ("A person who has been sentenced to probation pursuant to the provisions of [18 U.S.C. §§ 3561–3566] ... shall, during the term imposed, be supervised by a probation

officer to the degree warranted by the conditions *specified by the sentencing court."* (emphasis added)); Guidelines § 5F1.5(a) (occupational restriction may be imposed by *"[t]he court "* (emphasis added)); S.Rep. No. 225, 98th Cong. 1st Sess. ("Senate Report") at 92, *reprinted in* 1984 USCCAN at 3275 ("application of the specified considerations requires *the court* ... to consider [§ 3553(a)'s relevant] factors ..... [and] *the court* is then required to determine ... the length and condition of [probation]" (emphasis added)); *cf. United States v. Porter,* 41 F.3d 68, 70–71 (2d Cir.1994) (where restitution is ordered as a condition of supervised release, determination of amount and scheduling of payments is nondelegable); *United States v. Weichert,* 836 F.2d 769, 772 (2d Cir.1988) (impermissible to delegate factfinding as to amount of restitution payable where restitution was ordered as a condition of probation under Federal Probation Act, 18 U.S.C. § 3651 (repealed)), *cert. denied,* 488 U.S. 1017, 109 S.Ct. 813, 102 L.Ed.2d 802 (1989).

Thus, if we were to agree with the district court that no notification order had been imposed by the court itself, we would be constrained to conclude that the court had improperly delegated its authority to determine whether or not such a requirement would be imposed and had improperly refused to resolve the controversy created by Doe's opposition to such a requirement. For the reasons stated above, however, we regard the court's orders of June 12 and July 27 as requiring client notification "so long as [Doe] engages in this position of a tax preparer," July 27 Order.

## B. *The Merits*

▪ We also have difficulty with the substance of the court's decision to restrict Doe's freedom to engage in his tax-preparation occupation. While "a sentencing court has broad discretion in fixing conditions of probation," and we therefore review a sentence of probation under an abuse-of-discretion standard, we "carefully scrutinize unusual and severe conditions, such as one requiring the defendant to give up a lawful livelihood." *United States v. Cutler,* 58 F.3d 825, 838 (2d Cir.1995)

(internal quotation marks omitted). "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990). For the reasons that follow, we conclude that the requirement that Doe not conduct business as a tax preparer unless he notifies his clients of his conviction was not supported by findings that comport with the principles established by the pertinent statutory provisions and guidelines.

The Sentencing Reform Act of 1984 (the "Act"), 18 U.S.C. § 3551 et seq.; 28 U.S.C. §§ 991–998 (1994), established a framework for sentencing defendants whose offenses were committed on or after November 1, 1987. The Act directs the district court, in imposing sentence, to consider a variety of factors. These include not only the seriousness of the offense, the need to promote respect for the law, and the need to provide deterrence and just punishment, *see* 18 U.S.C. §§ 3553(a)(2)(A) and (B), but also the nature and circumstances of the offense, the defendant's history and characteristics, and the need to protect the public from further crimes by the defendant, *see* 18 U.S.C. §§ 3553(a)(1) and (2)(C). In carrying out this mandate, the court may, unless precluded by an applicable statutory provision, choose to impose a sentence of probation. *See* 18 U.S.C. §§ 3551(b)(1), 3561.

With respect to a sentence of probation, the Act instructs the court to "consider the factors set forth in section 3553(a) to the extent that they are applicable," both in determining whether to impose probation and "in determining the length of the term and the conditions of· probation." 18 U.S.C. § 3562(a). Section 3563 sets forth several probation conditions that "shall" be imposed, none of which is applicable here, *see* 18 U.S.C. § 3563(a), and a number of conditions that the court has discretion whether or not to impose, *see id.* 3563(b). The latter may include the condition that an individual defendant

refrain ... from engaging in a specified occupation, business, or profession bearing a reasonably direct relationship to the conduct constituting the offense, or engage in such a specified occupation, business, or profession only ... under stated circumstances.

18 U.S.C. § 3563(b)(6) ("occupational restrictions"). However, the discretion to impose occupational restrictions is not unfettered. Such restrictions may be imposed only if they are reasonably related to the factors set forth in §§ 3553(a)(1) and (a)(2); and, as they are deprivations of the defendant's liberty, such restrictions may be imposed only to the extent that they *"are reasonably necessary for the purposes indicated in section 3553(a)(2)."* 18 U.S.C. § 3563(b) (emphasis added).

The Act also indicates that if the court has not imposed a given condition of probation in its initial sentence, it may do so thereafter, prior to the expiration of the probationary period, only in accordance with

the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation *and the provisions applicable to the initial setting of the conditions of probation.*

18 U.S.C. § 3563(c) (emphasis added). *See* Fed.R.Crim.P. 32.1(b) (unless modification of probation is favorable to the probationer, a hearing and assistance of counsel are required).

The legislative history of the Act emphasizes that the conditions listed in § 3563(b) are discretionary and not automatic. The Senate Report on the bill that eventually became the Act, states that "except as provided in subsection (a), none of the conditions listed in the subsection [ (b) ] is required to be imposed." Senate Report at 95, USCCAN at 3278. The Report states that appropriate conditions should be fashioned for each individual defendant, explaining that "[i]t is certainly not intended that all the conditions suggested in subsection (b) be used for every defendant, but rather that conditions be tailored to each defendant to carry out the purposes of probation in his case." *Id.*

The Senate Report also states that the occupational restrictions permitted by § 3263(b)(6) are "intended to be used to preclude the continuation or repetition of illegal activities." Senate Report at 96, USCCAN at 3279; *see also id.* at 76, USCCAN at 3259 (goal of protecting the public from further crimes of the defendant "is particularly important for those offenders whose criminal histories show repeated serious violations of the law"). The admonition that occupational restrictions be imposed only to the extent that they are "reasonably necessary" was designed to "avoid[ ] a bar from employment that exceeds that needed to achieve that result." *Id.* at 96–97, USCCAN at 3279–80.

> The Committee recognizes the hardship that can flow from preventing a person from engaging in a specific occupation, business, or profession, particularly for those activities requiring many years of education and experience. *This particular condition of probation should only be used as reasonably necessary to protect the public.* It should not be used as a means of punishing the convicted person.

*Id.* at 96, USCCAN at 3279 (emphasis added).

In sum, the Act and its legislative history reveal that occupational restrictions may be imposed if reasonably necessary to protect the public from further crimes of the defendant, but may not be imposed to any greater extent than reasonably necessary to achieve that purpose.

In addition to setting out the statutory requirements, the Sentencing Reform Act established the United States Sentencing Commission ("Commission"), *see* 28 U.S.C. § 991, and instructed the Commission to promulgate guidelines, including "general policy statements" with respect to, *inter alia*, "the conditions of probation ... set forth in section[ ] 3563(b) ... of title 18," 28 U.S.C. § 994(a)(2)(B). The Guidelines issued by the Commission pursuant to this mandate reflect the statutory framework. They provide that, in addition to the mandatory conditions required by 3563(a),

> [t]he court may impose other conditions that (1) are reasonably related to the nature and circumstances of the offense, the

history and characteristics of the defendant, and the purposes of sentencing and (2) *involve only such deprivations of liberty or property as are reasonably necessary to effect the purposes of sentencing.* 18 U.S.C. § 3563(b).

Guidelines § 5B1.3(b) (emphasis added). Section § 5B1.4(a) lists " 'standard' " discretionary conditions of probation that are "generally recommended"; among them is the third-party notification condition that appeared in the judgment and Probation Form in the present case, *see* Guidelines § 5B1.4(a)(13) Policy Statement. While such third-party notification conditions are described in the § 5B1.4(a) as " 'standard,' " however, occupational restrictions are " 'special' conditions":

> (b) The following "special" conditions of probation and supervised release (14–24) are either recommended or required by law under the circumstances described, or may be appropriate in a particular case:
>
> . . . .
>
> (22) *Occupational Restrictions*
>
> Occupational restrictions may be imposed as a condition of probation.... *See* § 5F1.5 (Occupational Restrictions).

Guidelines § 5B1.4(b)(22) Policy Statement.

Section 5F1.5 provides that occupational restrictions may be imposed only "to the minimum extent necessary to protect the public":

> *Occupational Restrictions*
>
> (a) The court may impose a condition of probation ... prohibiting the defendant from engaging in a specified occupation, business, or profession, or limiting the terms on which the defendant may do so, only if it determines that:
>
> (1) a reasonably direct relationship existed between the defendant's occupation, business, or profession and the conduct relevant to the offense of conviction; and
>
> (2) imposition of such a restriction is reasonably necessary to protect the public because there is reason to believe that, absent such a restriction,

the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted.

(b) If the court decides to impose a condition of probation ... restricting a defendant's engagement in a specified occupation, business, or profession, the court shall impose the condition for the minimum time and to the minimum extent necessary to protect the public.

Guidelines § 5F1.5; *see also id.* Commentary (quoting Senate Report at 96–97, *reprinted in* 1984 USCCAN at 3279–80).

In sum, under the Guidelines, an occupational restriction is a special condition of probation that the court is not to impose unless it finds, *inter alia,* that there is reason to believe that, without such a restriction, the defendant will continue to engage in unlawful conduct similar to that for which he was convicted, and that such a restriction is, therefore, reasonably necessary to protect the public.

Within the above framework, this Court has approved the imposition of a probation condition restricting the defendant's pursuit of his occupation where the unlawful conduct was continued or repeated. In *United States v. Cutler,* 58 F.3d at 839, we held that an attorney convicted of criminal contempt after repeatedly violating a local court rule was permissibly prohibited temporarily from practicing in that court because his repeated misconduct provided "ample 'reason to believe that, absent such a restriction [he] w[ould] continue to engage in unlawful conduct similar to that for which [he] was convicted.'" *Id.* (quoting Guidelines § 5F1.5(a)(2)). Other circuits likewise have approved occupational restrictions imposed in connection with supervised release following imprisonment, *see* 18 U.S.C. § 3583(d) (as condition of supervised release, court may impose, *inter alia,* any condition of probation set forth in §§ 3563(b)(1)–(b)(10)), but have approved such restrictions only to the extent that they did not exceed the minimum needed to protect the public. *See, e.g., United States v. Schechter,* 13 F.3d 1117, 1118–19 (7th Cir.1994) (computer-consultant with extensive record of thefts from his employers was permissibly subjected to condition that

he "notify any employer of his past criminal conduct and status on supervised release," and that did not require him to notify parties for whom he served as an independent contractor); *United States v. Mills,* 959 F.2d 516, 519–20 (5th Cir.1992) (defendant convicted of turning back odometers on 12 cars he sold over a two-year period was permissibly subjected to a supervised-release condition that he not participate in operation of any car business; but it was impermissible to require him to sell his automobile dealership since this was "not the minimum condition reasonably necessary to protect the public").

The record in the present case does not appear to justify the occupational restriction that was imposed on Doe. While the relationship between Doe's present business and the offense of which he was convicted is obvious, there was no showing that an occupational restriction was reasonably necessary for the protection of the public. Doe was not a repeat offender. He was guilty of a single offense in 1988, and he had no Guidelines criminal history points. He had begun cooperating with the government some four years prior to sentencing, and in the same year began his own tax-preparation service. During the years that he cooperated with the government—a period more than twice the length of the probationary period eventually imposed—he apparently committed no further crimes and there were no complaints about his behavior.

The EDNY Probation Office dealt with Doe following his 1994 plea of guilty and supervised his probation for some six weeks after the 1995 judgment of conviction was entered. That office acknowledged that third-party risk is an important factor to be considered and that Doe's employment as an accountant was directly related to his offense, but it informed the court that that office "ha[d] carefully and thoroughly reviewed all factors in this case and is of the opinion that it is unlikely that Mr. [Doe] will again involve himself in criminal activity." (Probation Office June 9 Memorandum at 1.) Thus, the EDNY Probation Office "believe[d] and respectfully recommend[ed]" that Doe should not be required to notify his clients, in order to allow him "the opportunity to continue employment as a public accountant." (*Id.* at 1–2.)

When the district court denied that request, the government supported Doe's request for reconsideration, stating,

> [w]e do not believe he will ever counsel another client to provide false information on tax returns. Thus, we agree with the Probation Department that the risk to third parties is minimal.

(Government's July 20 Letter at 1.) Though the impetus for a notification requirement originated in the SDNY Probation Office, we are aware of no submissions in the record from that office casting doubt on the views of the government and the EDNY Probation Office that any risk to Doe's clients that he would repeat his unlawful conduct is minimal. Nor is it clear that the SDNY Probation Office would have had any basis for finding such notification reasonably necessary in the case of Doe, since the SDNY office had raised the question prior to even accepting the transfer of supervision.

■ In sum, the only evaluations that were before the court were those of the EDNY Probation Office and the United States Attorney's Office, which had had contact with Doe for some years, and those offices assessed any further risk to the public of repeated offenses by Doe as minimal. It is not clear that the district court believed Doe to pose more than a minimal risk, for it made no such finding. In denying Doe's early requests that he not be subjected to the notification requirement, the court gave no reason at all. In its final opinion, the court stated that the notification of Doe's clients was designed "to protect the public from *any possibility* that they might be deceived by a defendant a second time" and would produce "a substantial benefit to the public to insure that it does not in [sic] *any* further risk." September 8 Opinion at 5–6 (emphases added). Elimination of "any possibility" of risk is not the proper standard, and, in any event, the court did not make any finding that Doe himself posed any further risk.

We conclude that the district judge did not make the findings, required under the statute and the Guidelines, that ordering Doe to notify his clients of his conviction is reasonably necessary to protect the public and that such notification is the minimum occupational restriction needed to protect the public. To the extent that the court cited other factors, those factors could not justify the notification requirement. For example, the court stated its view that "[d]efendants, such as the defendant in this case, never seem to appreciate the 'breaks' that are given to them [in lenient sentences] and invariably start an assault on their lenient sentences requesting relief from fines, costs, restrictions on their travel for pleasure to Europe, Florida, etc...." *Id.* at 5. The record does not indicate that any of these requests was made in the present case.

The court also stated its view that "[u]nder the Sentencing Guidelines the U.S. Attorneys throughout the country have effectively usurped virtually all of the sentencing powers which traditionally were vested under the Constitution in the federal judiciary," and that the United States Attorney's office "[i]n this case ... appear[s] to be attempting to extend that power into providing 'exceptions' to the standard operating conditions of the Probation Department applicable to all defendants." *Id.* at 4–5. As indicated above, however, the court's view that client notification is automatically required of all defendants, or may be required without order of the court, is contradicted by the Probation Manual promulgated by the Administrative Office of the Courts, by the Sentencing Guidelines, and by the statute itself. Nor are we aware of anything in the record that would warrant any criticism of the United States Attorney's office.

We also note that the district court castigated Shevitz for her arguments that the court "ha[d] imposed a 'draconian' condition as part of its sentence and that it is 'unlawful' for the Court to 'modify' its sentence after the event and to delegate to the Probation Department a post-sentence decision which may be imposed 'without reason,'" calling her arguments "almost contemptuous." *Id.* at 6. Even had Shevitz's arguments lacked merit, we hardly think that characterization was warranted. And though the court disagreed with her contentions, most of them indeed had merit for (a) the Probation Office itself stated that the client-notification requirement would prevent Doe from working as a tax preparer; (b) the client-notification requirement was not imposed expressly by the court in sentencing, is not automatically

applicable, and was not agreed to by Doe, and hence the court's orders of June 12 and July 27 constituted a sentence modification; (c) it is impermissible for the court to delegate the decision as to whether and to what extent to impose a client-notification requirement; and (d) despite strong statements by the government and the Probation Office that there was no need for client notification, the court had ordered notification without stating any reason.

## CONCLUSION

For the foregoing reasons, the orders of the district court requiring that Doe notify his clients of his conviction are vacated. In case the SDNY Probation Office may have evidence to present suggesting a need for client notification, we remand for further consideration; if the court determines that such a requirement is to be imposed, it should make findings on the record adequate to permit appellate review.

Given the history of this matter, we conclude that the appearance of fairness would best be served by remanding to another district judge, and we so order.