**UNITED STATES of America,**
**Appellee,**

v.

**Edward BELLO, also known as Jason Hink, also known as Jerome Hink, also known as Joseph Fulano, Defendant–Appellant.**

**Docket No. 01–1682.**

United States Court of Appeals,
Second Circuit.

Argued: Aug. 8, 2002.

Decided: Oct. 23, 2002.

Steven M. Statsinger, Of Counsel, Appeals Bureau, The Legal Aid Society, Federal Public Defender Division, Appeals Bureau, New York, NY, for Appellant.

Joshua A. Goldberg, Assistant United States Attorney for the Southern District of New York, New York, N.Y. (James B. Comey, United States Attorney, Celeste L. Koeleveld, Assistant United States Attorney, on brief), for Appellee.

Before: JACOBS, CABRANES, and F.I. PARKER, Circuit Judges.

JACOBS, Circuit Judge.

Defendant Edward Bello appeals from a sentence entered in the United States District Court for the Southern District of New York (Hellerstein, J.) insofar as it imposes as a condition of probation a bar on television-viewing during a ten-month period of home detention. We conclude that the imposition of the bar for the stated purpose of promoting self-reflection and remorse exceeds the district court's broad discretion. Because the television restriction appears to have been an integral part of the defendant's overall sentence, we vacate the sentence and remand for resentencing.

## BACKGROUND

On June 19, 2001, Edward Bello pleaded guilty, without a plea agreement, to a sin-

gle-count indictment charging him with conspiracy to use stolen credit cards in violation of 15 U.S.C. § 1644(a). Bello and a co-conspirator had schemed to steal credit cards from lockers at a New Jersey health club and use the stolen cards to make unauthorized purchases.

The Presentence Investigation Report ("PSR"), prepared by the Probation Office pursuant to the U.S. Sentencing Guidelines ("U.S.S.G." or the "Guidelines"), computed the total offense level as 8 and the criminal history category as II.[1] The two criminal history points were based upon a 1992 conviction for possession of a gambling device and a 1997 conviction for credit card theft (each offense punished by one year of probation). Bello also had two other convictions too old to be counted (a 1973 conviction for simple assault and a 1978 conviction for disorderly conduct), as well as seven prior arrests in 1959–88 not resulting in convictions, for which he received no points under the Guidelines. No criminal history points were added for the fact that his present conviction and his most recent prior conviction were for virtually identical crimes.

On the basis of the Guidelines calculation in the PSR, which neither party contested and which the district court ultimately adopted at the sentencing hearing, Bello's sentencing range was four to ten months of imprisonment. *See* Tr. 17.[2] Because this was within Zone B of the Guidelines sentencing table, the court was authorized to impose a sentence of probation if it included at least four months of home detention or community confinement. *See* U.S.S.G. § 5C1.1(c)(3), (e)(3);

*id.* § 5F1.2 ("Home detention may be imposed as a condition of probation or supervised release, but only as a substitute for imprisonment."). The Probation Office considered, however, that the defendant was not "deserving of [the] privilege" of probation, and recommended that he be sentenced to four months of imprisonment.

By letter and at sentencing, Bello's counsel argued that probation with home detention would be an appropriate sentence for Bello (then 60 years old with a heart condition) because his income as a part-time videogame repairman was the sole source of support for his wife (who had Crohn's disease and could not work) and the couple's two teenage daughters. At the sentencing hearing on December 14, 2001, Bello apologized to the court for his criminal conduct, said he had committed the offense to get "[m]oney for medicine," and reported that he had been promised a full-time job starting the following month. Tr. 8.

The government opposed probation on the grounds that: it was unjustified by the crime of conviction and Bello's criminal history; Bello had "never spent a day in prison in his life" for his prior convictions; and "[Bello's] crimes [were] getting more serious, not less serious." *Id.* at 10–13. The government suggested that the defendant's two adult children could help support Mrs. Bello and the couple's teenage daughters while he was in prison.

Judge Hellerstein ruled: "With some misgiving, I will not impose custody. But I will impose as close to it as I can." *Id.* at 17. The sentence imposed consisted of five years of probation, the first ten

---

1. Bello's total offense level was calculated under the Guidelines as follows: his base offense level was 6, *see* U.S.S.G. § 2B1.1(a); 4 levels were added because the unauthorized credit card purchases totaled between $10,000 and $30,000, *see id.* § 2B1.1(b)(1);

and 2 levels were deducted for acceptance of responsibility, *see id.* § 3E1.1(a).

2. Citations to "Tr.__" refer to the transcript of the sentencing hearing on December 14, 2001.

months of which were to be spent in home detention. As a condition of probation, the court imposed *sua sponte* a television bar on Bello during his home detention: "There will be no television in the house. You're going to have to take your TV sets out of there." *Id.* After defense counsel objected that removal of all televisions from the household would be "unduly harsh" for Bello's family, the court modified the condition; Bello's teenage daughters could keep televisions in their rooms, and Mrs. Bello could watch there. *Id.* at 20–21. The court elicited Bello's promise that he would nevertheless abstain:

> THE COURT: ... I want you, on your honor, to state very clearly that you will not watch TV—
>
> [BELLO]: I won't.
>
> THE COURT: —during this entire period of home detention. Do I have your word?
>
> [BELLO]: Yes. You have my word, your Honor. Thank you. I appreciate it.

*Id.* at 21.[3]

Five days later, Bello moved to strike the television bar. In his motion, brought before the district court pursuant to Fed. R.Crim.P. 35(c), Bello argued that the restriction, even as modified, violated his First Amendment rights and was not reasonably necessary for his rehabilitation or reasonably related to the goals of the Sentencing Reform Act, as set forth in 18 U.S.C. §§ 3553(a)(2), 3563(b). The government took no position.

By Memorandum and Order dated December 26, 2001, the court denied Bello's motion, ruling that the television bar was "reasonably related to factors appropriately considered for sentencing purposes, including defendant's history and circumstances." Memorandum and Order Denying Removal of Condition of Probation ("Order Denying Removal") at 1. The court made clear that the restriction had been imposed to promote self-reflection: "[D]eprivation[s] of liberties are likely to create opportunities for self-reflection and ... without deprivation and self-reflection, there would be considerably less chance that defendant will conquer the habit of recidivism that has marred his life." *Id.* at 3.

Bello appealed. By order dated February 26, 2002, a panel of this Court granted a stay of his home detention pending the outcome of this appeal.

## DISCUSSION

A sentencing court has broad discretion to fix the conditions of probation, a decision we review only for abuse of discretion. *United States v. Peterson,* 248 F.3d 79, 82 (2d Cir.2001). The district court's discretion, however, is not "untrammeled," *United States v. Abrar,* 58 F.3d 43, 47 (2d Cir.1995), or "unfettered," *United States v. Doe,* 79 F.3d 1309, 1320 (2d Cir.1996), and we "carefully scrutinize unusual and severe conditions," *United States v. Cutler,* 58 F.3d 825, 838 (2d Cir. 1995) (internal quotation marks omitted). "[A]n erroneous view of the law or a clearly erroneous assessment of the evidence" amounts to an abuse of discretion. *Doe,* 79 F.3d at 1320 (quoting *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (internal quotation marks omitted)).

### I

Under the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551–3742; 28 U.S.C.

---

**3.** The final judgment provided: "The Defendant is Prohibited from viewing television. A television may be allowed in an area where the Defendant's wife and daughters only may have access, in a daughter's room." Judgment at 2.

§§ 991–998 (the "Act"), a court determining an appropriate sentence "shall" consider, *inter alia,* the following statutory purposes:

the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). The goal is to "impose a sentence sufficient, but not greater than necessary" to achieve these purposes. *Id.* § 3553(a).

In sentencing a defendant to probation, a court must impose certain "mandatory" conditions, *id.* § 3563(a); U.S.S.G. § 5B1.3(a), none of which is at issue here. A nonexclusive list of 21 additional, "discretionary" conditions are set out in 18 U.S.C. § 3563(b), with room left for "such other conditions as the court may impose," *see id.* § 3563(b)(22). One of the 21 enumerated discretionary conditions is home detention. *Id.* § 3563(b)(19) (providing that court may require that defendant "remain at his place of residence during nonworking hours").

■ In imposing conditions of probation, courts are to consider a variety of factors, including the list of statutory purposes found in § 3553(a)(2). *See id.* § 3563(b). The Guidelines provision governing conditions of probation incorporates these purposes, providing in relevant part:

The court may impose other conditions of probation to the extent that such conditions (1) are reasonably related to (A) the nature and circumstances of the offense and the history and characteristics of the defendant; (B) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (C) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (D) the need to protect the public from further crimes of the defendant; and (E) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and (2) involve only such deprivations of liberty or property as are reasonably necessary for the purposes of sentencing indicated in 18 U.S.C. § 3553(a).

U.S.S.G. § 5B1.3(b) (citing 18 U.S.C. § 3563(b)); *see also Mistretta v. United States,* 488 U.S. 361, 391, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) ("[T]he Guidelines bind judges and courts in the exercise of their uncontested responsibility to pass sentence in criminal cases."). A condition may be imposed, therefore, if it is reasonably related to one or more of the considerations or factors listed in section 5B1.3(b)(1)(A)-(E), and if the deprivation is no greater than needed to serve the statutory list of sentencing purposes.[4] *Cf. Abrar,* 58 F.3d at 46.

The text of the Guidelines and the Act reflects the intent of Congress that the

---

4. "[D]espite the continuous use of the ... conjunctive 'and' [in the Guidelines provision, and] taking into account the authorizing statutes, a condition may be imposed if it is reasonably related to any one or more of the specified factors." *Abrar,* 58 F.3d at 46 (interpreting the analogous Guidelines provision governing conditions of supervised release); *see also United States v. Sicher,* 239 F.3d 289, 291 (3d Cir.2000); *United States v. Kent,* 209 F.3d 1073, 1076 n. 3 (8th Cir.2000); *United States v. Johnson,* 998 F.2d 696, 697–99 (9th Cir.1993).

sentencing court fashion an individualized set of conditions appropriate to each defendant. *See Doe,* 79 F.3d at 1320 (" '[C]onditions [should] be tailored to each defendant to carry out the purposes of probation in his case.' " (quoting S. Rep. 98–225 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3278)).

## II

■ Bello challenges the television viewing bar, arguing that: (1) it is not reasonably related to the nature and circumstances of the offense, the history and characteristics of the defendant, protection of the public, or the other statutory goals of sentencing; (2) there is no nexus between the offense conduct (stealing credit cards from gym lockers) and television; (3) he can avoid self-reflection by finding other entertainments at home, such as radio and the Internet; and (4) because the condition is unusual and implicates expressive rights, it is subject to "a particularly searching scrutiny" that requires a "clear and obvious" relationship (lacking here) between the condition and the offense conduct. *See* Appellant's Brief at 9, 12, 15, 16.

In denying Bello's motions to remove the condition or stay its imposition pending appeal, the district court explained that the television restriction was designed to force "deprivation and self-reflection," and thus encourage Bello to "conquer the habit of recidivism that has marred his life." Order Denying Removal at 3; Order ("Order Denying Stay") at 1. The court reasoned that the removal of a likely diversion would encourage a salutary self-reflection and remorse:

> Defendant has committed a serious crime.... It is thus important that his sentence to home detention be grave, and be taken gravely. It is thus important that the normal diversion of television-watching be denied to defendant during his period of home detention, in order that he have ample opportunity to reflect on the ways of his life and the harm that he has brought to his family, the likelihood that punishment will be far more severe if he again commits crimes, and the model to which he has to aspire for the sake of his children.

Order Denying Removal at 4.

The court also undertook to justify the bar by pointing to Bello's criminal history, stating that "[t]he absence of any custodial punishment in his past seems to have exacerbated a certain penchant in his make-up for recidivism." *Id.* The court did not, however, impose the bar to punish Bello for his past behavior: the condition was "not for punitive ... purposes." Order Denying Stay at 1.

The challenged condition appears to be without analog. In the only case cited by the parties involving a bar on watching television, the restriction was closely related to the offense conduct and the characteristics of the offender. *See In re McDonald,* 133 N.C.App. 433, 515 S.E.2d 719, 720–21 (1999) (upholding probation condition restricting television for juvenile defendant "too susceptible to impression to be watching television" where defendant spray-painted "Charles Manson" on walls of abandoned boat house after seeing television documentary about Manson). Similarly inapposite are other cited cases that involve conditions restricting activities related to a defendant's offense conduct. *See, e.g., United States v. Sofsky,* 287 F.3d 122 (2d Cir.2002) (remanding for tailoring of condition limiting use of computers by a defendant convicted of receiving child pornography on his computer); *United States v. Loy,* 237 F.3d 251 (3d Cir.2001) (remanding for clarification of condition that restricted defendant's access to "all forms of pornography," where defendant had been convicted of possessing child pornog-

raphy); *United States v. Bird,* 124 F.3d 667, 684 (5th Cir.1997) (affirming condition that required defendant to stay 1000 feet from abortion clinics where defendant had been convicted of violating Freedom of Access to Clinic Entrances Act); *United States v. Turner,* 44 F.3d 900, 903 (10th Cir.1995) (affirming condition that required abortion protester to stay away from clinics so as not to "repeat her criminal conduct"). Neither party here has pointed to a case in which a court has deprived a defendant of competing stimuli for the purpose of jump-starting the defendant's conscience. *Cf. United States v. Cutler,* 58 F.3d 825, 838 (2d Cir.1995) (noting need for careful scrutiny of unusual conditions of probation).

Section 5B1.3(b)(1) of the Guidelines requires that the television bar be reasonably related to one or more of the statutory sentencing factors.[5] Of these factors, the restriction does not appear to have been designed to further respect for the law, to impose just punishment, to deter criminal conduct, or to provide Bello with needed training.[6] *See* U.S.S.G. § 5B1.3(b)(1)(B)-(C), (E). The district court explicitly connected the restriction to Bello's history and characteristics, *see id.* § 5B1.3(b)(1)(A), and suggested that the restriction would encourage Bello to change his ways, which would arguably "protect the public from future crimes of the defendant," *see* U.S.S.G. § 5B1.3(b)(1)(D). Thus, the question becomes whether the loss of televised entertainment reasonably relates to Bello's past, his characteristics, and the abatement of his criminality.

As to Bello's past and characteristics, the district court pointed only to his "pattern of increased criminality," a common trait among felony offenders generally. *See* Order Denying Removal at 4. Without some closer connection between watching television and this defendant or this crime, we cannot say that the relationship between the challenged condition and this statutory factor is reasonable.

Also lacking is a sufficient relationship between the television restriction and the abatement of Bello's criminality. Even if contemplation is deemed somehow more beneficial for this defendant than for most others (for reasons not clear from the record), we are inclined to agree with Bello that because other amusements are available to him at home, there is no reason to assume that in the absence of televised entertainment he will tend to his conscience. Bello cites radio and the Internet as ways he might spend his time at home without resort to silent introspection. He could add crosswords and jigsaw puzzles, not to mention light reading. For all the record shows or the district court has found, Bello is as likely to occupy his mind by planning his next crime as anything else.

Because the challenged condition is outside the statutory grant of discretion, we do not reach Bello's argument that the television restriction implicates First Amendment considerations, and we therefore should require a "clear and obvious" relationship between the condition and the factors listed in U.S.S.G. § 5B1.3(b)(1).

---

**5.** Section 5B1.3(b)(2) imposes a distinct requirement that the deprivation be no greater than reasonably necessary. *Sofsky,* 287 F.3d at 126.

**6.** While any additional increment of punishment could arguably be said to promote respect for the law or deter crime, nothing in

the record suggests that the district court imposed the television bar in furtherance of these statutory goals. The district court did not connect the condition to the nature and circumstances of Bello's offense. *See* U.S.S.G. § 5B1.3(b)(1)(A).

We do not suggest that a district court is prohibited from imposing conditions of probation that restrict a defendant's access to household amusements and comforts, including television. Conditions designed to limit a defendant's access to luxury at home might further the purposes of home detention, which by law serves as a "substitute for imprisonment." *See* U.S.S.G. § 5F1.2. The Guidelines suggest that the imposition of such conditions as part of a sentence of home detention might be appropriate where "the amenities available in the residence of a defendant would cause home detention *not to be sufficiently punitive.*" *Id.* § 5F1.2 cmt. 2 (emphasis added).[7] In this case, however, the district court made clear that it was not imposing the condition for that purpose. *See* Order Denying Stay at 1.

## III

■ Bello argues that the television bar is a "relatively unimportant consideration" that should be excised if it cannot stand because the "ordinary remedy" would be to leave his sentence otherwise unaltered. Appellant's Brief at 16; Appellant's Reply Brief at 8.

Remand for resentencing after the vacatur of a condition is not an extraordinary remedy. *See, e.g., United States v. Peterson,* 248 F.3d 79, 86 (2d Cir.2001) (remanding for resentencing after vacating condition of probation not reasonably related to prior conviction); *United States v. Abrar,* 58 F.3d 43, 47 (2d Cir.1995) (remanding for resentencing after finding abuse of discretion by sentencing court in imposing condition of supervised release).

Bello argues that remand for resentencing in these circumstances is disfavored, citing *United States v. Sofsky,* 287 F.3d 122 (2d Cir.2002), and contends that we have remanded for resentencing after striking a condition of probation only if the condition was overbroad and in need of tailoring. *Sofsky* does not suggest such a practice or rule. In *Sofsky,* the district court imposed a condition prohibiting a defendant who was convicted of receiving child pornography on his computer from using a computer or the Internet without approval by his probation officer. We vacated the prohibition and remanded for entry of a more tailored condition, leaving the rest of the defendant's sentence intact. *Id.* at 127. That defendant, however, had been sentenced principally to a 121–month term of imprisonment, and our vacatur therefore affected the overall sentence in a small way. Here, the disputed condition was evidently an essential consideration in the decision to impose a sentence of probation rather than jail, making a remand for resentencing at least as appropriate as in *Sofsky.*

The defendant's citation to *Fiore v. United States,* 696 F.2d 205 (2d Cir.1982), is likewise unpersuasive. First, and crucially, *Fiore* is a pre-Guidelines case. Second, to the extent that *Fiore* illustrates the practice of this Court in framing a mandate, it reflects that we preserve the option of "[*either* ] eliminating the objectionable condition and letting the sentence stand as modified, [*or* ] remanding for resentencing in accordance with our opinion." *Id.* at 211 (quoting *United States v. Jimenez,* 600 F.2d 1172, 1175 (5th Cir. 1979)) (emphases added) (alterations in original).

*Fiore* goes on sensibly to suggest that remand would be particularly appropriate where the condition was an "integral part"

---

7. In general, Guidelines commentary must be given controlling weight unless it is plainly erroneous, inconsistent with a directive of Congress, or unconstitutional. *Stinson v. United States,* 508 U.S. 36, 45, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993).

of the sentence. *Id.* The condition at issue here was integral, even indispensable. In denying Bello's motion for a stay, the district court emphasized that the restriction was "basic to [its] considerations regarding punishment," that the bar was "essential," and that "[w]ithout that condition, [it] probably would have ordered that the defendant be detained." Order Denying Stay at 1.

We decline to eliminate a condition deemed by the sentencing court to be "basic to [its] considerations regarding punishment" without remanding for a full reconsideration of the appropriate punishment.

In remanding, we express no view as to whether an appropriate condition should be fashioned to replace the television restriction, or as to whether an appropriate sentence for the defendant should include prison.

## CONCLUSION

The defendant's sentence is vacated, and we remand to the district court for a re-sentencing not inconsistent with this opinion.