**UNITED STATES of America, Appellee,**

v.

**Syed Ali ABRAR, Defendant–Appellant.**

**No. 1808, Docket 95–1080.**

United States Court of Appeals,
Second Circuit.

Argued April 4, 1995.

Decided June 22, 1995.

Marjorie M. Smith, New York City (The Legal Aid Soc., Federal Defender Div., Appeals Bureau, New York City, of counsel), for defendant-appellant.

Frank McClain–Sewer, Asst. U.S. Atty., E.D.N.Y., Brooklyn, NY (Zachary W. Carter, U.S. Atty. and Emily Berger, Asst. U.S. Atty., of counsel), for appellee.

Before: NEWMAN, Chief Judge, and WINTER and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Defendant-appellant Syed Ali Abrar appeals from a judgment entered February 10, 1995 in the United States District Court for the Eastern District of New York, Reena Raggi, *Judge*, that convicted him, following a guilty plea, of transferring a false identification document that appeared to be issued under the authority of the United States in violation of 18 U.S.C. § 1028(a)(2) and (c)(1). Abrar challenges his sentence, contending that the district court improperly imposed: (1) a prison term because it could not levy a fine due to Abrar's indigence; and (2) a supervised release condition that Abrar repay his personal debts.

Although we reject Abrar's first contention, we agree that the supervised release condition is not authorized by the Sentencing Guidelines. Accordingly, we vacate and remand for resentencing.

## Background

Prior to his arrest, Abrar was employed by Wackenhut Security, a private company that the Immigration and Naturalization Service ("INS") engaged to maintain security in connection with the processing and transportation of aliens at New York's Kennedy Airport. Taking advantage of the opportunity for wrongdoing presented by this employment, Abrar assisted various individuals to enter the United States unlawfully by placing INS stamps on passports and other immigration documents without authorization. Abrar received $300 to $400 for each of the fifty to sixty stamped documents that he provided, and his brother-in-law paid him $5,000 for this assistance, for a total of at least $20,000.

During the eighteen months after his arrest Abrar cooperated in an investigation of corrupt INS airport inspectors, resulting in the arrest and ultimate guilty pleas of two coconspirators. Abrar then pled guilty, pursuant to a plea agreement, to a single-count information charging him with transferring one false immigration document.

The government made a motion for downward departure pursuant to USSG § 5K1.1, p.s. that detailed Abrar's cooperation, but also noted that he "was not totally forthright

with the Office of the Inspector General. He misled agents by telling them that an illegal alien detainee was not related to him when, in fact, he was. If Abrar had come forward with the truth regarding his relationship to this illegal alien, a case may have been made regarding drug smuggling into a federal detention facility." Nevertheless, the government concluded that Abrar "has provided substantial assistance to the United States in its prosecution of persons dealing in false identification documents."

Abrar's presentence report calculated a total offense level of seven, premised upon a base offense level of nine, USSG § 2L2.1, and a two-point reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a). This total offense level of seven combined with a criminal history category of I to yield a prison term of one to seven months. In addition, the offense called for a fine of $500 to $5000, USSG § 5E1.2(c)(3), but the presentence report indicated that Abrar had no assets and personal debts totaling approximately $14,000.

Abrar's counsel argued that because of Abrar's assistance to the government and certain difficult family circumstances, he should not be sentenced to a prison term or to pay a fine, but should serve only a term of supervised release. The district court responded, however, that "this is not a crime for which there can be no punishment," and observed that Abrar had profited by flouting the immigration laws, perhaps to the detriment of those legitimately trying to enter the country. The court further stated:

> You are now before this court with absolutely no money. And it does seem to me that one sentence that might be appropriate in this case would have been one that would have required you to disgorge all the earnings that you had made as a result of this scheme.
>
> There seems to be no reason why you should continue to enjoy the fruits of that unlawful conduct. The other option is for me to incarcerate you. And finally, as [Abrar's counsel] says, I can put you on some kind of probationary sentence.

The district court then determined that while Abrar's assistance may have been sub-stantial, his cooperation was not "total and complete," as detailed in the government's motion. For that reason and because Abrar's conduct "needs a strong, strong message of deterrence to anyone who would seek to engage in it," the district court declined to depart downward and imposed a term of imprisonment of six months, followed by three years of supervised release. In addition, while the district court did not impose a fine, it imposed as a condition of supervised release a requirement that Abrar repay his personal debts at the rate of $150 each month. The court then reiterated how seriously it viewed the crime Abrar had committed, and stated that it might have departed upward were it not for Abrar's cooperation.

Abrar then moved for bail pending appeal, contending that he would present a substantial issue likely to result in a remand, namely that the district court had violated USSG § 5H1.10, p.s. (socio-economic status is "not relevant in the determination of a sentence") by sentencing him to a jail term because he could not pay a fine. He relied upon the two paragraphs from the sentencing transcript quoted above.

The district court denied the motion in a written opinion, acknowledging its obligation under § 5H1.10 and explaining that the quoted paragraphs responded to a suggestion by Abrar's counsel that only a term of supervised released be imposed, but neither a jail term nor a fine. The court noted that regardless of whether it could or would have levied a fine, it would have imposed a jail term in any event because of the seriousness of Abrar's criminal activity. The court explained that it mentioned the fine first only because it was clear that the fine could not be imposed, but not because a fine, standing alone, would have been an appropriate sentence. *See United States v. Abrar,* No. CR 94–0740(RR), slip op. at 6–13 (E.D.N.Y. Feb. 10, 1995).

The district court stayed Abrar's surrender to allow him to apply to this court for release on bail pending his appeal. This appeal followed, and this court granted Abrar's motion to be released on bail pending his appeal.

### Discussion

■ On appeal, Abrar renews his argument that the district court violated § 5H1.10 by imposing a jail term only because it could not impose a fine. In addition, he contends that the condition of supervised release requiring him to repay his personal debts is not authorized by the Guidelines.

With respect to the term of imprisonment, although the transcript of the sentencing hearing may be ambiguous, the district court stated in its written opinion that it did not consider Abrar's inability to pay a fine in deciding whether to sentence him to a prison term. We see no reason to discredit the district court's explanation. As the court noted in its opinion in response to Abrar's bail application, reiterating a statement made by the court at Abrar's sentencing hearing, Abrar "faced" a sentence that would include, in addition to imprisonment within the Guidelines range, a fine, *see* USSG § 5E1.2, and a term of supervised release, *see id.* § 5D1.1(b). Taken in context, we do not view the challenged portion of the sentencing transcript as establishing that Judge Raggi viewed imprisonment, supervised release, and a fine as mutually exclusive sentencing alternatives, and imposed imprisonment only because Abrar's indigence prevented her from levying a fine.

■ We agree, however, with Abrar's contention concerning the supervised release condition. The district court's only justification for imposing the condition was that Abrar's failure to repay his debts "is basically taking money from these people. You have no right to do that." However, the relevant guideline authorizes a sentencing court to impose only conditions that are

> reasonably related to (1) the nature and circumstances of the offense *and* the history and characteristics of the defendant, *and* (2) the need for the sentence imposed to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, *and* to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. §§ 3553(a)(2) and 3583(d).

USSG § 5D1.3(b) (emphasis added).

■ As an initial matter, we are inclined to agree with the Ninth Circuit that despite the continuous use of the (emphasized) conjunctive "and" in § 5D1.3(b), taking into account the authorizing statutes, a condition may be imposed if it is reasonably related to any one or more of the specified factors. *See United States v. Johnson,* 998 F.2d 696, 697–99 (9th Cir.1993). The statutes cited in § 5D1.3(b), 18 U.S.C. §§ 3553(a)(2) and 3583(d), generally treat the factors outlined in § 5D1.3(b) as matters to be considered in imposing a condition of supervised release. In any event, we fail to perceive how the debt repayment condition imposed in this case reasonably relates to any of these factors.

■ Sentencing courts have broad discretion to tailor conditions of supervised release to the goals and purposes outlined in § 5D1.3(b). *See, e.g., United States v. Thurlow,* 44 F.3d 46, 47 (1st Cir.) (per curiam) (condition that defendant convicted of theft-related offenses abstain from consuming alcohol permissible because of defendant's history of substance abuse and use of crime proceeds to purchase alcohol on several occasions), *cert. denied,* —— U.S. ——, 115 S.Ct. 1987, 131 L.Ed.2d 874 (1995); *United States v. Chinske,* 978 F.2d 557, 560 (9th Cir.1992) (conditions that defendant not own firearms, attend a substance abuse treatment program, and submit to searches of his person, vehicle, and residence related to offense of maintaining a residence for the cultivation of marijuana); *United States v. Sharp,* 931 F.2d 1310 (8th Cir.1991) (condition subjecting defendant to warrantless searches to determine if he possessed alcohol or drugs permitted when defendant convicted of narcotics violation); *cf. United States v. Prendergast,* 979 F.2d 1289, 1292–93 (8th Cir.1992) (condition requiring defendant convicted of wire fraud to abstain from consuming alcohol and drugs, to undergo drug tests, and to be subject to warrantless searches of his premises, vehicle, or person impermissible in absence of "evidence indicating that [defendant] suffers from alcoholism or that the use of alcohol in

any way contributed to the commission of the offense for which he was sentenced"). We do not perceive, however, an adequate connection between the challenged release condition in this case and any of the relevant factors.

The government contends that because Abrar received at least $20,000 for the provision of illegal immigration documents, "the court could obtain a well-founded sense that Abrar had a history of living beyond his means, requiring that a condition of supervised release be tailored to provide correctional treatment for Abrar and protection of the public from further crimes by Abrar." The district court did not articulate this rationale, instead expressing its understandable indignation that Abrar was not paying his debts. It could as easily be argued that the added financial strain of mandated debt repayment could tempt Abrar to renewed, remunerative criminal activity.

While 18 U.S.C. § 3583(d) authorizes a sentencing court to impose "any other condition [of supervised release] it considers to be appropriate," we do not read this provision as providing untrammelled discretion, especially in light of the more specific directions provided by the Sentencing Guidelines implementing § 3583(d) and 18 U.S.C. § 3563(b) (which sets forth mandatory and discretionary conditions of probation that are incorporated by reference in § 3583(d)).

USSG § 5B1.4, p.s., provides recommended conditions of probation and supervised release, including the following "special" conditions that "are either recommended or required by law under the circumstances described, or may be appropriate in a particular case:"

(15) *Restitution*

If the court imposes an order of restitution, it is recommended that the court impose a condition requiring the defendant to make payment of restitution or adhere to a court ordered installment schedule for payment of restitution. *See* § 5E1.1 (Restitution).

(16) *Fines*

If the court imposes a fine, it is recommended that the court impose a condition requiring the defendant to pay the fine or adhere to a court ordered installment scheduled for payment of the fine.

(17) *Debt Obligations*

If an installment schedule of payment of restitution or fines is imposed, it is recommended that the court impose a condition prohibiting the defendant from incurring new credit charges or opening additional lines of credit without approval of the probation officer unless the defendant is in compliance with the payment schedule.

(18) *Access to Financial Information*

If the court imposes an order of restitution, forfeiture, or notice to victims, or orders the defendant to pay a fine, it is recommended that the court impose a condition requiring the defendant to provide the probation officer access to any requested financial information.

USSG § 5B1.4(b)(15)–(18), p.s.

As is apparent, these provisions pertain only to installment payment of fines or restitution. We are reluctant to approve a broadening of such conditions to employ the sentencing process as a general instrument for the collection of unrelated debts from defaulting defendants, at least in the absence of any articulated connection between a release condition such as that imposed by the district court upon Abrar and the relevant considerations set forth in USSG § 5D1.3(b).

We accordingly conclude that the imposition of the condition requiring repayment by Abrar of his personal debts constituted an abuse of discretion on the record presented by this appeal. Although Abrar did not object below to this aspect of his sentence, we rule in his favor because the error is plain. *See United States v. Eng*, 14 F.3d 165, 172 n. 5 (2d Cir.) ("[A]n imposition of a sentence in violation of law would be plain error."), *cert. denied*, —— U.S. ——, 115 S.Ct. 54, 130 L.Ed.2d 13 (1994).

## Conclusion

The judgment of the district court is vacated and the case is remanded for resentencing.