**UNITED STATES of America, Appellee,**

**v.**

**Hesham ISMAIL, Defendant–Appellant.**

**Docket No. 99–1711**

United States Court of Appeals, Second Circuit.

Argued: May 4, 2000

Decided: May 23, 2000

Steven M. Statsinger, Legal Aid Society, Federal Defender Division, (Henriette D. Hoffman, on the brief) New York, New York, for Appellant.

Gary Stein, Assistant United States Attorney for the Southern District of New York (Mary Jo White, United States Attorney for the Southern District of New York, Ira M. Feinberg, Assistant United States Attorney, of counsel), New York, New York, for Appellee.

Before: FEINBERG, PARKER, and STRAUB, Circuit Judges.

PER CURIAM.

Hesham Ismail appeals from the sentence imposed after a plea of guilty by the United States District Court for the Southern District of New York (Richard M.

Berman, *Judge*). As part of the sentence, the district court ordered Ismail to pay the full amount of restitution, payable to Citibank, without interest, within the five years of Ismail's supervised release. Ismail challenges this payment schedule as uninformed by the statutory factors to be considered in imposing restitution payment schedules, and as unreasonably onerous. For the following reasons, we affirm.

Beginning in 1994, Ismail worked for Citibank N.A. ("Citibank") as a relationship officer in its International Personal Banking Group. From September to November 1998, Ismail embezzled $167,832 from the accounts of two of his customers by preparing and signing fraudulent transaction request forms. With these funds, Ismail issued seven bank checks, which he signed on behalf of Citibank. Most of these checks were payable to Chat Communications L.L.C. ("Chat"), a start-up prepaid phone card company operated by Ismail's brother, Hosam. Ismail also caused Citibank to issue an $8,000 check to cash and a $13,174 check to a Visa credit card company as payment of a debt owed to a friend. After depositing the checks to the Chat account, Ismail drew several checks on the Chat account made payable to himself and to cash. Ismail was caught when a Citibank customer called for an update on one of the accounts from which Ismail had embezzled money. On March 2, 1999, Ismail made written confessions to bank security personnel and to agents of the Federal Bureau of Investigation ("FBI"), which led to his arrest later that month.

On June 14, 1999, without a plea agreement, Ismail pleaded guilty to a one-count information charging him with bank embezzlement, in violation of 18 U.S.C. § 656. Following the guilty plea, the Probation Office prepared a Presentence Investigation Report (the "PSR"), which calculated Ismail's offense level at 14 and his Guidelines range at 15–21 months' imprisonment. The PSR also recommended that Ismail be ordered to pay restitution in the amount of $153,743.28, the remaining amount owed to Citibank after the $14,089.01 he had already repaid. The PSR recommended that payment of restitution be a condition of supervised release, but did not recommend a payment schedule. The PSR contained detailed information on Ismail's family situation, educational background, vocational skills, employment history, and financial circumstances.

On November 22, 1999, the court held a sentencing hearing and sentenced Ismail. Ismail did not object to the factual findings in the PSR and the district court adopted them. Ismail objected to several of the PSR recommendations with regard to his offense level. The district court rejected his arguments; he does not appeal on any of those grounds. Ismail did not object to the PSR recommendation that he be required to pay full restitution, because full restitution is mandated by statute. *See* Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. §§ 3663A & 3664(f)(1).

After some discussion, the court ultimately ordered Ismail to pay the full amount of restitution, payable to Citibank, without interest, over five years of supervised release on a monthly schedule of even installments calculated by dividing the total amount of restitution by 60 months. In "imposing the restitution requirement," the court stated that it:

> considered the factors set forth in 18 U.S.C. § 3663(a)(1)(B)(i) ... as well as the recommendation of the probation department. Specifically, I have considered the amount of loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant, and the defendant's dependents, and such other factors as I have deemed appropriate.

The court also made payment of restitution a condition of supervised release.

In imposing this payment schedule, the district court also considered, and rejected, the payment schedule proposed by the defendant. Ismail offered to pay 10% of his monthly net earnings, with the understanding that such payments would be subject to civil collection efforts following his supervised release if full restitution was not made by that time. The government stated that it had no objection to Ismail's proposal. Although the court rejected Ismail's plan, it did not state on the record its reasons for doing so.

On appeal, Ismail argues that the district court misunderstood its obligations under the law, as evidenced by its citation to the wrong restitution provision, and therefore did not fulfill its obligation under the MVRA to consider the statutory factors such as his financial situation in imposing the restitution payment *schedule.* Although it is true that when stating that it had considered the statutory factors, the district court mistakenly cited the general restitution statute, *see* 18 U.S.C. § 3663(a)(1)(B)(i) (listing factors to be considered in determining whether to impose restitution), this Court has held that "the factors are the same in either case." *United States v. Kinlock,* 174 F.3d 297, 299 n. 2 (2d Cir.1999) (comparing 18 U.S.C. § 3663 with § 3664). Citation to the wrong statutory provision therefore does not change the fact that the district court thoroughly considered the factors it was required to consider before imposing restitution and the payment schedule. Here, the court specifically stated, in the face of counsel's objection and suggested payment schedule, that it had considered the relevant factors and was imposing the restitution schedule as planned.

Ismail argues in the alternative that the district court abused its discretion by imposing an unrealistic, unreasonable, and onerous payment schedule and an unreasonable, improper condition of supervised release. Ismail argues that as an indigent defendant, with limited earning potential, he will not be able to comply with this schedule and meet his family's basic needs. This argument is countered by the government's reference to Ismail's MBA, his spouse's potential earnings, his business background, and his own pre-paid phone card business which appeared at sentencing to have some future earnings potential.

The propriety of the payment schedule imposed is reviewed for abuse of discretion, *United States v. Porter,* 90 F.3d 64, 68 (2d Cir.1996), as is the propriety of a condition of supervised release, *United States v. Abrar,* 58 F.3d 43, 47 (2d Cir. 1995). The standard of review is "extremely deferential." *United States v. Giwah,* 84 F.3d 109, 114 (2d Cir.1996). Because a restitution order

> requires a delicate balancing of diverse, sometimes incomparable factors, some of which not only lack certainty but may indeed be based on mere probabilities, expectations, guesswork, even a "hunch," the sentencing court is in the best position to engage in such balancing, and its restitution order will not be disturbed absent abuse of discretion.

*United States v. Atkinson,* 788 F.2d 900, 902 (2d Cir.1986). "[I]t makes little sense for an appellate court, significantly more removed from the case than the district court, to scrutinize the decision closely." *Porter,* 90 F.3d at 68. Upon review, we find that the district court was within its discretion in ordering Ismail to make full restitution by the end of his five years of supervised release.[1]

---

1. The Legal Aid Society, counsel for Ismail in this case, informed us that in situations involving indigent defendants, the usual practice is to impose a payment plan that is "expressed as a percentage of the defendant's income." *Kinlock,* 174 F.3d at 301. Where the government states that it has no objection to such a plan, but the sentencing court nevertheless imposes a different type of plan, it would be helpful to this Court on review, albeit not mandatory, for the sentencing court to indicate why a percentage-payment plan is unsatisfactory.

Accordingly, the judgement of the district court is affirmed.