**UNITED STATES of America,
Appellee,**

v.

**Luiz BEN ZVI, Defendant–Appellant.**

**No. 99–1713.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 12, 2000.

Decided March 06, 2001.

Charles A. Ross, Brafman & Ross, (Melinda Sarafa on he Briefs) New York, NY, for Defendant–Appellant.

Peter A. Norling, Assistant United States Attorney, Eastern District of New York, New York, NY, (Loretta E. Lynch, United States Attorney, Eastern District of New York, Brooklyn, NY; Cecil C. Scott, Assistant United States Attorney, of counsel) for Appellee.

Before JOHN M. WALKER, Jr., Chief Judge, VAN GRAAFEILAND, Circuit Judge, MARRERO, District Judge.*

Judge VAN GRAAFEILAND concurs in the result.

JOHN M. WALKER, Jr., Chief Judge:

Defendant Luiz Ben Zvi ("Ben Zvi") appeals from an amended judgment entered November 11, 1999 before the United States District Court for the Eastern District of New York (Thomas C. Platt, Jr., *District Judge* ), following an earlier jury trial and subsequent appeal to this court, *see United States v. Zvi ("Ben Zvi I")*, 168 F.3d 49 (2d Cir.), *cert. denied*, 528 U.S. 872, 120 S.Ct. 176, 145 L.Ed.2d 148 (1999). The prosecution centered on a fraudulent scheme engineered by Ben Zvi and her brother in which they staged a robbery of their own jewelry store for insurance proceeds. On June 14, 1995, defendant was convicted, among other criminal violations, of a single-count multi-object conspiracy to

---

* The Honorable Victor Marrero, of the United States District Court for the Southern District of New York, sitting by designation.

commit wire fraud, domestic money laundering, and international money laundering.

In the first appeal, defendant challenged the money laundering objects of the conspiracy conviction as time-barred and this court agreed. The conspiracy conviction was sustained, however, because it was possible to tell that the jury's conviction was based in part on the timely wire fraud object. *See id.* at 55. The case was remanded for resentencing. On remand, the district court sentenced Ben Zvi to sixty months imprisonment and imposed restitution in the amount of $6,624,512.

In this appeal, defendant argues that: (1) the district court should have dismissed the wire fraud conspiracy charge because the first indictment filed against her was outside the statute of limitations period, none of the superseding indictments properly related back to the first indictment for purposes of tolling, and none of the superseding indictments was independently timely; (2) she did not receive effective assistance of counsel as required by the Sixth Amendment when her trial counsel failed to challenge the timeliness of the wire fraud conspiracy charge; (3) the district court erroneously considered time-barred objects of domestic and international money laundering in calculating the offense level under U.S.S.G. § 1B1.2(d), which provides that a multi-object conviction charged in a single count may be treated for purposes of sentence computation as "a separate count of conspiracy for each offense that the defendant conspired to commit"; and (4) in imposing the $6,624,512 restitution, the district court abused its discretion by not identifying the specific victims of defendant's conspiratorial acts and their individual losses, and clearly erred by ordering restitution in light of the defendant's financial resources.

For reasons which will be explained, we hold that (1) review of the wire fraud conspiracy conviction's timeliness is foreclosed by the law of the case doctrine, (2) the Sixth Amendment ineffective assis-

tance of counsel claim is without merit, (3) the challenge to the district court's treatment of the time-barred money laundering objects as separate conspiracy convictions under United States Sentencing Guideline § 1B1.2(d) is moot, and (4) the restitution order is proper.

The judgment of the district court is affirmed.

## BACKGROUND

The background of this case is substantially detailed in *Ben Zvi I*, 168 F.3d at 53; we set out only the facts relevant to this appeal.

Defendant, along with her brother Roz Ben Zvi, owner of Josi Jewelry which sold gold chains in New York City, staged a robbery of the facility on February 26, 1988. Prior to this, the "stolen" jewelry had been surreptitiously sold by the defendants and the proceeds laundered through overseas bank accounts. Following the "robbery," the two filed an insurance claim with Lloyd's of London for $3,995,000, the value of the "stolen" jewelry. In preparation for payment of the claim, Lloyd's made an electronic transfer from London, England on August 15, 1988 to Alan J. Martin, Lloyd's New York counsel. Martin subsequently used these funds to pay Josi and various jewelry consignors for their losses.

A grand jury indicted Ben Zvi and her brother for their roles in the scheme on August 11, 1993. The indictment ("First Indictment") contained two counts: one charging conspiracy to defraud Lloyd's between January 1988 and November 1988 and alleging wire fraud as the sole object of the conspiracy and specifically citing defendant's causing the August 15th wire transfer from Lloyd's. Several overt acts undertaken by Ben Zvi and her brother in furtherance of the conspiracy also were alleged; all, however, were outside the conspiracy count's five year statute of limitations. A second count in the First Indictment charged Ben Zvi with the sub-

stantive offense of wire fraud, identifying the August 15th wire transfer as the predicate violation.

Ben Zvi's counsel filed a motion to dismiss the First Indictment on August 26, 1993, contending as to the conspiracy charge that "[n]one of the three alleged overt acts ... [making up the wire fraud conspiracy] fall within th[e] five year" statute of limitations for conspiracy actions, and that the charge was therefore time barred. In response, the Government advised the district judge that it would file a superseding indictment that would "moot" Ben Zvi's objection regarding the failure to allege overt acts within the five year statute of limitations window.

On September 15, 1993, the Government filed a superseding two-count indictment ("Second Indictment") that was substantially identical to the First Indictment except for the addition of two overt acts in furtherance of the wire fraud conspiracy. The additional overt acts were:

> (d) On or about August 15, 1988, the defendants ROZ BEN ZVI and LUIZ BEN ZVI ... caused an electronic funds transfer to be made from London to Chemical Bank, account no. 041–009703.

> (e) In or about and between August, 1988 and December 1989, the defendants ROZ BEN ZVI and LUIS BEN ZVI ... caused checks to be drawn from Chemical Bank account no. 041–009703 in payment of the insurance claim.

After the Government filed the Second Indictment, Ben Zvi's trial counsel did not pursue dismissal of the conspiracy count, taking the position before the district court that "[t]hat portion of the motion involving the statute of limitations was eventually mooted by the government's filing of the [Second Indictment]."

On March 15, 1994, and again on May 15, 1994, the Government filed two more superseding indictments ("Indictments Three and Four") that substantially amended the conspiracy count to charge domestic money laundering and international money laundering as additional conspiracy objects, and charged substantive domestic and international money laundering counts as well. On June 14, 1995, a jury found Ben Zvi guilty of the single-count multi-object wire fraud, domestic money laundering, and international money laundering conspiracy together with numerous substantive domestic and international money laundering violations.

In her first appeal, Ben Zvi argued, among other things, that the substantive money laundering counts were outside the statute of limitations because Indictments Three and Four, which alleged these violations for the first time, were filed more than five years after the unlawful laundering occurred. We agreed and vacated the substantive money laundering convictions. *See Ben Zvi I*, 168 F.3d at 54–55. Although the money laundering objects of the multi-object conspiracy charge were necessarily time barred as well, we sustained the conspiracy conviction. We did so on the grounds that the jury instructions and verdict form revealed that the jury had found wire fraud as an independent object of the conspiracy, *see id.* at 55, and no challenge to the timeliness of the wire fraud object was made during the appeal.

We remanded the case to the district court to reconsider sentencing and its order of restitution. *See id.* at 61.

## DISCUSSION

### I. Wire Fraud Conspiracy Conviction

In this second appeal, Ben Zvi challenges the timeliness of the wire fraud conspiracy count. The challenge is styled as both a direct appeal of the conviction and as a collateral attack alleging ineffective assistance of counsel under the Sixth Amendment.

A. Direct Appeal

 Ben Zvi contends that the district judge committed plain error [1] during both the trial phase, and at resentencing on remand, in not dismissing the wire fraud conspiracy charge as untimely. Because the present appeal represents the first time Ben Zvi has actively pursued this statute of limitations issue either before the district court (Ben Zvi raised but failed to pursue it following the Government's filing of the Second Indictment) or before this court, consideration of the issue as a direct challenge is foreclosed by the law of the case doctrine.

 The law of the case doctrine has two subsidiary rules, both of which are implicated here. *See, e.g., United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir.2000). The first, "commonly referred to as the 'mandate rule,' describes the duty of the district court on remand" upon receipt of the mandate, which is the appellate court's direction to the trial court, *id.* at 40; the second governs the obligation of a court of appeals in adhering "to its own decision at an earlier stage of the litigation," *id.* at 39 (internal quotation marks and citations omitted).

 The mandate rule "compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or *impliedly* decided by the appellate court." *United States v. Bell*, 5 F.3d 64, 66 (4th Cir.1993) (emphasis added); *see also Tenzer*, 213 F.3d at 40. Likewise, where an issue was ripe for review at the time of an initial appeal but was nonetheless foregone, the mandate rule generally prohibits the district court from reopening the issue on remand unless the mandate can reasonably be understood as permitting it to do so. *See United States v. Stanley*, 54 F.3d 103, 107 (2d Cir.1995) (citing *Bell*, 5 F.3d at 66, for proposition that " 'the [mandate] rule fore-

closes litigation of issues decided by the district court but foregone on appeal or otherwise waived' "); *United States v. Kikumura*, 947 F.2d 72, 76 (3d Cir.1991); *see also United States v. Webb*, 98 F.3d 585, 587 (10th Cir.1996) (discussing circumstances when departure from mandate rule may be warranted).

 To determine whether an issue remains open for reconsideration on remand, the trial court should look to both the specific dictates of the remand order as well as the broader "spirit of the mandate." *Kikumura*, 947 F.2d at 76. In the context of a remand for resentencing where an appellate court has already fully considered the merits of the conviction, the trial court generally is foreclosed from reconsidering the underlying merits of the conviction. *See, e.g., United States v. Gama–Bastidas*, 222 F.3d 779, 784 (10th Cir.2000); *United States v. Bell*, 988 F.2d 247, 250 (1st Cir.1993); *Webb*, 98 F.3d at 588.

Our mandate in *Ben Zvi I* cannot reasonably be construed to authorize consideration by the district judge of issues relating to the underlying merits of the conviction. It is unambiguously limited in scope: the district judge was merely to "reconsider sentencing" and "its order of restitution." *Ben Zvi I*, 168 F.3d at 61. As a result, the district judge did not err on remand in not considering the timeliness of the wire fraud conspiracy charge, as authority to do so was lacking.

 With respect to Ben Zvi's contention that the district court erred in not dismissing the wire fraud conspiracy charge as untimely during the trial phase, our consideration of this issue is foreclosed

---

1. For there to be plain error, "there must be an error that is plain and that affects substantial rights." *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (alterations and quotation marks omitted). Even then, an appellate court retains discretion as to whether to remedy the plain

error. *See id.* at 735–36, 113 S.Ct. 1770 (appellate court "should correct a plain forfeited error affecting substantial rights if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " (alteration in original)).

by the second rule of the law of the case doctrine.

> Under [this rule], a decision made at a previous stage of litigation, which could have been challenged in the ensuing appeal but was not, becomes the law of the case; the parties are deemed to have waived the right to challenge that decision, for it would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost.

*County of Suffolk v. Stone & Webster Eng'g Corp.*, 106 F.3d 1112, 1117 (2d Cir. 1997) (internal quotation marks omitted); *see Bell*, 988 F.2d at 250 (same). The proper time for defendant to have challenged the timeliness of the wire fraud conspiracy charge was on the first appeal when the issue was then ripe for review. She did not do so, and as a result, is foreclosed from raising it now.

### B. Ineffective Assistance

■ Ben Zvi also challenges the timeliness of the wire fraud conspiracy count indirectly through a Sixth Amendment claim. She contends that the failure of both her trial counsel and her appellate counsel to raise the issue before the district court or on the first appeal amounted to a denial of effective assistance. *See also Mason v. Hanks*, 97 F.3d 887, 892 (7th Cir.1996) ("Generally speaking, the performance of appellate counsel is assessed using the same standards applied to trial counsel....").

Ben Zvi never raised her ineffective assistance claim in the district court. As a general matter "[i]neffective assistance of counsel claims are best brought [first] before the district court through a motion for a new trial or via collateral relief" so as to permit development of a sufficient record for appellate consideration. *United States v. Booker*, 981 F.2d 289, 292 (7th Cir.1992) (internal citations omitted); *see United States v. Williams*, 205 F.3d 23, 35 (2d Cir.2000) ("baseline aversion to resolving

ineffectiveness claims on direct appeal" (citation omitted)). Nonetheless, the underlying challenge defendant now raises—the timeliness of the wire fraud conspiracy charge-is sufficiently presented to permit our consideration of the ineffective assistance claim, *see United States v. Collins*, 60 F.3d 4, 7 n. 1 (1st Cir.1995), and we think that judicial efficiency would be served by doing so. *See, e.g., United States v. Leone*, 215 F.3d 253, 256 (2d Cir.2000) (discussing appellate court options for resolving ineffective assistance claims first raised on appeal).

■ Success on an ineffective assistance claim requires two showings. First, counsel's legal representation must have fallen below an objective standard of reasonableness judged by prevailing professional norms. *See Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir.1998) (internal citations omitted). Second, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Jackson*, 162 F.3d at 85 (citations omitted); *see Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. Because we find conclusive defendant's failure to satisfy the second showing, we consider only it. *See* Marisa Van Dongen & Michelle B. Nadler, *Right to Counsel*, 86 Geo. L.J. 1593, 1605 n. 1637 (1998) (citing cases for proposition that "courts generally begin an ineffective assistance analysis by determining if the defendant was prejudiced by the alleged conduct").

Ben Zvi contends that her counsel should have sought dismissal of the wire fraud conspiracy based on the following: (1) the conspiracy count in the First Indictment was untimely since all the overt acts charged were outside the statute of limitations; (2) the wire fraud conspiracy counts in the superseding indictments were not independently timely since none asserted an overt act that was both within the statute of limitations and undertaken

in furtherance of the conspiracy; and (3) the First Indictment was "facially invalid," thus precluding the wire fraud conspiracy count in the superseding indictments from relating back to it for tolling of the statute of limitations. To establish a "reasonable probability" that her counsels' failure to raise these statute of limitations arguments led to her conviction on the wire fraud conspiracy count, Ben Zvi must succeed on each of these arguments; that is, a conclusion against her on any one of these arguments would alone defeat her untimeliness challenge. If the wire fraud conspiracy was timely, there was no prejudice in counsel's failure to argue untimeliness and her ineffective assistance claim fails.

■ The applicable limitations period for a wire fraud conspiracy charge is five years. *See* 18 U.S.C. § 3282. For a conspiracy charge that requires proof of overt acts to be within the statute of limitations, the (1) conspiracy must still have been ongoing within the five year period preceding the indictment, and (2) "at least one overt act in furtherance of the conspiratorial agreement [must have been] performed within that period." *Grunewald v. United States,* 353 U.S. 391, 396–97, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957) ("[T]he crucial question in determining whether the statute of limitations has run is the scope of the conspiratorial agreement, for it is that which determines both the duration of the conspiracy, and whether the act relied on as an overt act may properly be regarded as in furtherance of the conspiracy."); *see Brown v. Elliott,* 225 U.S. 392, 401, 32 S.Ct. 812, 56 L.Ed. 1136 (1912) ("[In the case of an alleged conspiracy,] the period of limitations must be computed from the date of the last [overt act] of which there is an appropriate allegation and proof." (internal quotation marks omitted)); *see also United States v. Davis,* 533 F.2d 921, 929 (5th Cir.1976).

### 1. Timeliness of First Indictment

Ben Zvi argues that the wire fraud conspiracy as charged in the First Indictment was time barred because none of the alleged overt acts occurred within five years of the indictment's return. We agree.

The First Indictment was not returned until August 11, 1993, and its latest overt act was on April 12, 1988, well beyond the five year limitations period.

■ The Government argues that the wire fraud conspiracy count is timely because it charged Ben Zvi with "caus[ing]" an electronic funds transfer to be made on August 15, 1988 from Lloyd's of London to its attorney in New York, Alan J. Martin, and that this is an overt act even if it was not expressly charged as one. *See, e.g., United States v. Smith,* 197 F.3d 225, 228 (6th Cir.1999). The Government's reliance on the wiring of funds from Lloyd's to Martin fails to cure the untimeliness, however, because the wiring of the funds was not an overt act by Ben Zvi or her co-conspirators. To constitute an overt act for purposes of the statute of limitations the act must involve some affirmative conduct or deliberate omission on the part of Ben Zvi or her coconspirators. *See, e.g., Davis,* 533 F.2d at 928 ("issuance of the contract by [government agency] in reliance on the falsifications [of defendants] was not for purposes of the statute of limitations an overt act [by defendants] in furtherance of the conspiracy"). The wiring of funds by Lloyd's to its New York counsel on August 15, 1988, though precipitated by earlier fraudulent acts and omissions of defendant and her coconspirators, did not involve or otherwise turn on any identifiable act or omission of the conspirators as of the time of the wire transfer. And therefore, the wiring of the funds cannot be used as an overt act to satisfy the statute of limitations.

### 2. Timeliness of Superseding Indictments

■ Ben Zvi's second statute of limitations challenge centers on whether any of the wire fraud conspiracy counts in the superseding indictments was independent-

ly timely. We find that the wire fraud conspiracy count in the Second Indictment was independently timely and, furthermore, that the wire fraud conspiracy charges in the Third and Fourth Indictments related back to the wire fraud conspiracy charge in the Second Indictment, making them timely as well.

The Second Indictment properly alleged overt acts by Ben Zvi or her co-conspirators to further the scheme occurring within five years of its filing, which was September 15, 1993. Specifically, it alleged as overt acts the causing of "checks to be drawn from [Alan J. Martin's bank] account ... in payment of the insurance claim" between "August, 1988 and December 1989[.]" A portion of these payments were made to Josi Jewelry, and thus represented anticipated economic benefits of the conspirators, see United States v. Mennuti, 679 F.2d 1032, 1035 (2d Cir.1982) ("conspiracy continues until the conspirators receive their anticipated economic benefits"); see also United States v. Fletcher, 928 F.2d 495, 500 (2d Cir.1991), the knowing receipt of which by the defendant and her co-conspirators constituted overt acts in furtherance of the conspiracy, see United States v. Girard, 744 F.2d 1170, 1173–74 (5th Cir.1984).

 Moreover, the wire fraud conspiracy counts in the Third and Fourth Indictments—which were substantially the same as charged in the Second Indictment—relate back to the Second Indictment for determination of timeliness. It is black letter law that "[o]nce an indictment is brought, the statute of limitations is tolled as to the charges contained in that indictment." United States v. Grady, 544 F.2d 598, 601 (2d Cir.1976). When a superseding indictment supplants a pending

timely-filed indictment, any charges in the superseding indictment that are neither materially broadened nor substantially amended from the earlier indictment relate back to the date of the filing of the earlier indictment. The superseding indictment continues its predecessor's tolling of the statute of limitations and inherits its predecessor's timeliness. See, e.g., United States v. O'Bryant, 998 F.2d 21, 23 (1st Cir.1993); Grady, 544 F.2d at 601.

Because the wire fraud conspiracy charges in each of the superseding indictments were therefore timely, any challenge Ben Zvi's previous counsel might have made on limitations grounds would have been futile. Thus, Ben Zvi suffered no prejudice from her counsels' omissions and her ineffective assistance claim fails.[2]

## II. Application of U.S.S.G. § 1B1.2(d) to Time–Barred Conspiracy Objects

 To arrive at the offense level for the conspiracy conviction, the district court utilized § 1B1.2(d) of the United States Sentencing Guidelines, which provides that in calculating the sentence for a single-count, multi-object conspiracy conviction the sentencing judge may impose a term of incarceration as if the defendant "had been convicted on a separate count of conspiracy for each" object, U.S.S.G. § 1B1.2(d), so long as "the court, were it sitting as a trier of fact, would convict the defendant of conspiring to commit that object offense" had it been separately charged, id. § 1B1.2, cmt. 4. The judge treated the wire fraud, domestic money laundering, and international money laundering objects as separate conspiracy counts, and then applied the grouping rules in Guidelines §§ 3D1.2 and 3D1.4 to yield an adjusted offense level of 26. Ben Zvi chal-

---

**2.** Ben Zvi's argument that the First Indictment was not "validly pending," Grady, 544 F.2d at 601–02, because its wire fraud conspiracy was untimely, therefore precluding it from tolling the statute of limitations for the wire fraud conspiracy charges in the superseding indictments, need not be considered because the wire fraud conspiracy in the superseding indictments were independently timely. Compare Smith, 197 F.3d at 228–29; and United States v. Drucker, 453 F.Supp. 741, 742 (S.D.N.Y.1979); with United States v. Crysopt Corp., 781 F.Supp. 375, 377–78 (D.Md. 1991); and United States v. Gillespie, 666 F.Supp. 1137, 1141 (N.D.Ill.1987).

lenges this, arguing the district court should not have used the time-barred money laundering objects in applying Guideline § 1B1.2(d).

We are unable to consider this issue further because we find it is moot. Ben Zvi is no longer incarcerated and a post-release sentencing correction cannot alleviate injury that resulted from the earlier incarceration. In such instances, a sentencing appeal is deemed moot unless the defendant establishes some other "'concrete and continuing [or imminent] injury' sufficient to create an Article III case or controversy" to appeal her prison sentence. *United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir.1999).

 Ben Zvi has made no showing of a continuing or imminent concrete injury. Defendant's only claim of potential injury is that her five year sentence may have collateral effects on possible future immigration proceedings. First, she contends the five year sentence would preclude her from seeking discretionary relief from deportation as provided for by § 212(c) of the Immigration and Naturalization Act.[3] Even assuming the unavailability of discretionary relief from deportation by INS could constitute a sufficiently concrete collateral effect to establish Article III standing, the retroactive downward adjustment of Ben Zvi's five year prison sentence would have no effect on her ability to seek such relief under § 212(c), however, because its availability turns not on the sentence imposed but on the period of actual incarceration. *See Rabiu v. INS*, 41 F.3d 879, 883 (2d Cir.1994).

 Second, Ben Zvi argues that the length of her sentence is a possible factor the INS judge might consider in deciding whether to grant discretionary relief. In light of the multitude of factors the INS judge might opt to take under consideration, the uncertainty of the weight he might decide to place on each factor, and the uncertainty as to whether he would even consider the length of sentence imposed, we find that a potential denial of § 212(c) discretionary relief is entirely too speculative and abstract for Article III standing.

Accordingly, Ben Zvi's challenge to the district court's use of the time-barred objects under Guideline § 1B1.2(d) is dismissed as moot.

## III. Restitution

Ben Zvi also appeals the district court's imposition of restitution for $6,624,512, contending: (1) the judge did not identify each of the underwriters of Lloyd's insurance policy and failed to determine the exact amount of money that each underwriter lost, and (2) the judge erred in imposing restitution in light of Ben Zvi's limited financial resources.

 In determining whether to order restitution under 18 U.S.C. § 3663, the sentencing judge is to "consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." *United States v. Mortimer*, 52 F.3d 429, 436 (2d Cir.1995); *see* 18 U.S.C. § 3664(a). Our task on appeal is to ensure both that the sentencing judge did not abuse his discretion by failing to consider these factors, *see United States v. Kinlock*, 174 F.3d 297, 300 (2d Cir.1999), and that the "findings resulting therefrom" were

---

**3.** Prior to 1996, § 212(c) of the Immigration and Naturalization Act provided for discretionary relief from deportation for aliens so long as they had not "been convicted of an aggravated felony and [had not] served a term of imprisonment of at least 5 years[.]" Immigration Act of 1990, Pub.L. No. 101–649 § 511, 104 Stat. 5052 (amending § 212(c) of the Immigration and Naturalization Act of 1952, 8 U.S.C. § 1182(c)). Because Ben Zvi's conviction involved a fraud in excess of $10,000, it constitutes an "aggravated felony," *see* 8 U.S.C. § 1101(a)(43)(M)(i), and she would thus be ineligible for relief under § 212(c) had she "served a term of imprisonment of at least 5 years[.]"

not in clear error. *United States v. Porter*, 90 F.3d 64, 68 (2d Cir.1996).

 The sentencing judge did not abuse his discretion in declining to identify each of Lloyd's underwriters and in not making precise findings as to the amounts each was owed. Lloyd's acted as a unified entity with respect to this insurance claim and, as the Government argues, it was a "collective Lloyd's" that issued the payment from its central funds. We believe this obviated any need for the sentencing judge to expressly identify each underwriter. Similarly, the sentencing judge acted within the bounds of his discretion in not making detailed findings with respect to whether Lloyd's underwriters received compensation from other sources for their losses in light of the sworn affidavit of Lloyd's New York counsel that attested to the fact that no such compensation was received.

Ben Zvi's contention that the district judge clearly erred in ordering restitution given her limited financial resources is also unpersuasive. A defendant's limited financial resources at the time restitution is imposed is not dispositive of whether restitution is proper, *see Mortimer*, 52 F.3d at 436, particularly where the defendant has a reasonable potential for future earnings. Thus, "[e]ven an indigent defendant may be subject to the duty to pay restitution when and if funds are eventually acquired." *Porter*, 90 F.3d at 70; *see United States v. Ismail*, 219 F.3d 76, 78 (2d Cir.2000) (per curiam) (present indigency not a barrier to restitution order where future earning power exists). Furthermore, in the absence of a defendant showing a restricted future earnings potential by a preponderance of the evidence, it is entirely reasonable for a district judge to presume future earnings in ordering restitution. *See, e.g.,* 18 U.S.C. § 3664(e) ("The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant ... shall be on the defendant."). The record reveals no indication that Ben Zvi introduced any evidence of a restricted earnings potential. We thus conclude that the district court properly ordered restitution based on a default presumption of future earnings.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

VAN GRAAFEILAND, Senior Circuit Judge:

I concur in the result.