*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

Before
FULTON, TANG, and HITESMAN,
Appellate Military Judges

———————————————

**UNITED STATES**
Appellee

**v.**

**Jeffrey D. SAGER**
Aviation Ordnanceman Airman (E-3), U.S. Navy
Appellant

**No. 201400356**

Argued: 2 May 2019—Decided: 30 July 2019.

Appeal from the United States Navy-Marine Corps Trial Judiciary upon further review following remand from the United States Court of Appeals for the Armed Forces. Military Judge: Commander John A. Maksym, JAGC, USN. Sentence adjudged 29 January ~~2017~~ 2014 by a general court-martial convened at Fleet Activities Yokosuka, Japan, consisting of officer and enlisted members. Sentence approved by convening authority: confinement for two years and a bad-conduct discharge.

For Appellant: Lieutenant Commander William L. Geraty, JAGC, USN.

For Appellee: Lieutenant Kimberly Rios, JAGC, USN (argued); Captain Brian L. Farrell, USMC (on brief).

Senior Judge FULTON delivered the opinion of the Court, in which Senior Judge TANG and Senior Judge HITESMAN joined.

*Date sentence adjudged administratively corrected in header.*

_____

**PUBLISHED OPINION OF THE COURT**

_____

FULTON, Senior Judge:

A panel of members with enlisted representation sitting as a general court-martial convicted the appellant, contrary to his pleas, of one specification of abusive sexual contact, in violation of Article 120, Uniform Code of Military Justice (UCMJ).[1] The members acquitted the appellant of a second specification also alleging abusive sexual contact against the same complaining witness. The convening authority approved the adjudged sentence of 24 months' confinement and a bad-conduct discharge.

This case is before us for the third time. The Court of Appeals for the Armed Forces (CAAF) reversed our earlier opinion affirming the appellant's conviction for abusive sexual contact.[2] The unusual posture of this case after trial required us to decide whether the terms *asleep*, *unconscious*, and *otherwise unaware* as used in Article 120(b)(2) represented distinct theories of criminal liability. In our first review of this case, we held that they do not. Rather, we held that the reasons for a victim's lack of awareness, be it sleep, unconsciousness, or something else, were only relevant to whether the accused should have known that the victim was unaware of the contact.[3]

The CAAF held that our interpretation was incorrect. Reversing this court, the CAAF held that "'asleep,' 'unconscious,' [and] 'otherwise unaware'" represent three separate theories of liability.[4] The CAAF also held that the term "'otherwise unaware' mean[s] unaware in a manner different from asleep and . . . unconsciousness."[5] The CAAF returned the case to us for a new factual sufficiency review, this time applying the correct interpretation

_____

[1] 10 U.S.C. § 920 (2012).

[2] *United States v. Sager*, No. 201400356, 2015 CCA LEXIS 571 (N-M. Ct. Crim. App. 29 Dec 2015) (*Sager I*), *rev'd and remanded*, *United States v. Sager*, 76 M.J. 158 (C.A.A.F. 2017) (*Sager II*).

[3] *Sager I*, 2015 CCA LEXIS 571 at *9.

[4] *Sager II*, 76 M.J. at 162.

[5] *Id.*

of Article 120(b)(2).[6] In conducting that review, the CAAF directed us to also consider whether the Supreme Court's decision in *Green v. United States*,[7] which held that a jury's silence as to a charge terminates a defendant's jeopardy as to that charge, applies to this case.

We completed our review and found that the appellant's conviction for abusive sexual contact was insufficiently supported by the evidence. We set aside the appellant's conviction, dismissing the charge and its specification.[8]

Following that decision, the government moved for en banc reconsideration.[9] The government alleged that the panel erred in three ways. First, the government alleged that we had failed to consider the alleged victim's state before and during the initial sexual contact. Second, the government alleged that the panel erroneously understood the alleged victim's testimony to mean that he was asleep during the sexual contact in question. Third, the government alleged that we had not considered whether the appellant was guilty of abusive sexual contact, which the government suggested was a lesser included offense of committing a sexual contact when the appellant knew or reasonably should have known that the victim was asleep, unconscious, or otherwise unaware that the sexual contact was occurring.

We declined to reconsider the case en banc. But because the panel had not considered lesser included offenses, we granted panel reconsideration of the following issue: What, if any, lesser included offenses may this court substitute for the disapproved findings of abusive sexual contact?[10]

The prospect of affirming a lesser included offense on reconsideration raised a second issue. The military judge's instructions and the record as a whole suggested that the members had determined the appellant's guilt as to the specification by holding separate secret ballots as to at least two elements of the offense. This raised the possibility that, while two-thirds of the members may have concurred as to the appellant's guilt as to each element, it was nonetheless possible that two-thirds of the members had not concurred that the appellant was guilty of *every* element. We therefore specified this issue,

---

[6] *Id.*

[7] 355 U.S. 184 (1957).

[8] *See United States v. Sager*, No. 201400356, 2018 CCA LEXIS 40 (N-M Ct. Crim. App. 31 Jan 2018) (unpub. op.) (*Sager III*).

[9] Gov. Motion for En Banc Reconsideration of 5 Mar 2018.

[10] NMCCA Order of 12 Jun. 2018.

asking whether we could be certain that, at a minimum, the same two-thirds of the members voted that the victim was otherwise unaware of the sexual contact at issue *and* that the appellant reasonably should have known that the alleged victim was otherwise unaware. We asked both parties to brief these two issues.

In its brief, the government did not suggest any offenses that, in its view, could be affirmed as lesser included offenses. Instead, the government urged us to remand the case to the convening authority for new action. The new action was necessary, according to the government, because the convening authority had approved the members' findings as reflected on the findings worksheet, which the military judge had published and which specified the theory under which the members convicted the appellant. The government argued that the president's announcement of the verdict, which did not specify the theory under which the members convicted the appellant, represented a general verdict of guilt as to the specification, and that the convening authority's action reflecting the more detailed findings in the findings worksheet was error. In oral argument, the government further argued that the purported error in the convening authority's action deprived us of jurisdiction.

On reconsideration, we continue to find that the record does not support a finding that the appellant committed a sexual contact on the alleged victim while the alleged victim was otherwise unaware that the contact was occurring (taking *otherwise* to mean for a reason other than sleep or unconsciousness). We also continue to find that under *Green v. United States* the appellant was functionally acquitted of the language in the specification of which the members did not convict him.

We decline to decide the specified issue asking whether the voting procedures in this case guaranteed that at least two-thirds of the members voted to convict the appellant of every element of the offense. This issue is both moot and beyond the scope of our remand.

As for the government's argument that the convening authority's action does not correctly reflect the members' general verdict, we find that government's request is waived, that this argument contravenes the law of the case, and that the government's desired relief is beyond the scope of our remand.

## I. BACKGROUND

The appellant and Airman TK were shipmates on a Navy ship homeported in Yokosuka, Japan. On the evening of the offenses, Airman TK visited several bars near the naval base and met the appellant, whom he understood to be his "liberty buddy," at one of the bars. Airman TK, the appellant, and

several other Sailors spent the rest of the evening together. Around 2300, the group left the bar and walked to Petty Officer DS's apartment, where they spent the night.

By this time, Airman TK was "[v]ery drunk."[11] He was stumbling, slurring his words, and he vomited into a bucket the appellant brought him. According to Airman TK, after vomiting, he recalls "passing out" on a futon in the living room.[12] He awoke to the appellant manually stimulating his penis. Airman TK felt the appellant's hand on his penis but was unable to talk or move because he was too drunk. After about five to ten minutes of manual stimulation, his penis was erect. Although he could not move, Airman TK mentally tried without success to lose his erection. After manually stimulating Airman TK, the appellant performed oral sex on him until he ejaculated.

Based on these facts, the government charged the appellant with two specifications of sexual assault. For fellating Airman TK, the government charged the appellant with committing a sexual act on Airman TK when the appellant knew or reasonably should have known that Airman TK was incapable of consenting due to intoxication. The members acquitted the appellant of this offense. For manually stimulating Airman TK's penis, the government charged the appellant with committing a sexual contact on Airman TK when the appellant knew or reasonably should have known that Airman TK was asleep, unconscious, or otherwise unaware that the sexual contact was occurring. The members convicted the appellant of this offense.

The military judge took an unusual approach to findings in this case. Instead of instructing the members to vote on the appellant's guilt in the specification, the military judge directed the members to hold separate votes for different theories of liability under Article 120(b)(1):

> [Y]ou have to circle under the charge and specification the theory of the government you adopt if you convict. You'll notice that . . . [i]t's he knew or should have known . . . . That means you're going to have to vote . . . on both theories . . . . The first vote is going to be, okay, is he guilty or not guilty of the charge under the . . . specification under the theory of "knew" he knew. Is he guilty or not guilty under the theory of "should have

---

[11] Record at 522.

[12] *Id.* at 527.

known" because the government has both theories . . . . But you have to circle the one that's applicable, okay.[13]

The findings worksheet presented the different theories of liability as choices for the members to circle if they convicted on that theory. Although the military judge did not instruct the members that they had to circle whether they found that Airman T.K. was asleep, unconscious, or otherwise unaware at the time, the members circled not only that they found the appellant "reasonably should have known," but also that Airman T.K. was "otherwise unaware" that a sexual act was occurring.[14] When called upon to announce the members' verdict, the president stated in open court that the appellant was "[t]o the additional Charge and Specification [t]hereunder: Guilty."[15] After the members departed the courtroom, the military judge announced the "entire verdict" as "to the Additional Charge, guilty, in that Airman Sager committed a sexual contact on Airman [TK] when Airman Sager reasonably should have known that Airman [TK] was otherwise unaware that the sexual act was occurring."[16] Neither party objected. This is the finding the CAAF has directed us to review for factual sufficiency.

## II. DISCUSSION

### A. Scope of Review

The posture of this case requires us to determine what questions are now within the scope of our review. As this case is before us on remand, the mandate rule circumscribes our review.

The mandate rule is simply a more powerful version of the law-of-the-case doctrine.[17] A subordinate court "has no power or authority to deviate from

---

[13] *Id.* at 1198.

[14] Appellate Exhibit (AE) 131. The findings worksheet presented to the members read as follows:

(b) Guilty in that AN Sager committed a sexual contact upon [Airman TK] when AN Sager (knew) (or) (reasonably should have known) that [Airman TK] was (asleep), (unconscious), (or) (otherwise unaware) that the sexual act was occurring.

[15] Record at 1252.

[16] *Id.* at 1254.

[17] *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 n.3 (D.C. Cir. 1996).

the mandate issued by [a superior] appellate court."[18] "The mandate rule has two [distinct] components—the limited remand rule, which arises from action by an appellate court, and the waiver rule, which arises from action (or inaction) by one of the parties."[19] Under the limited mandate rule, issues expressly or impliedly decided by the appellate court are not remanded to the court in receipt of the mandate.[20] Under the waiver rule, "any issue that could have been but was not raised on appeal is waived and thus not remanded."[21] "[W]here an issue was ripe for review at the time of an initial appeal but was nonetheless foregone, the mandate rule generally prohibits [a] court from reopening the issue on remand unless the mandate can reasonably be understood as permitting it to do so."[22]

The CAAF's mandate here is straightforward, directing us to decide two things. First, we must decide whether the conviction is factually sufficient. Our consideration of this question must take into account the CAAF's determination that "otherwise unaware" means unaware in a manner or way different than sleep or unconsciousness. Second, the mandate directs us to decide whether *Green v. United States* applies to this case. In both of these matters our review is to be "consistent with" the CAAF's opinion vacating our first opinion.

## B. Jurisdiction

During oral argument, the government seemed to suggest that we do not have jurisdiction in this case.[23] The government argued that we may only affirm findings where we are unsure of what findings the convening authority approved. We generally have an obligation to ensure that we have jurisdiction to act. Challenges to subject matter jurisdiction are never waived. But this late challenge to our jurisdiction requires us to reconcile the mandate rule discussed above with late-but-unwaivable challenges to our jurisdiction.

---

[18] *Briggs v. Penn. R.R. Co.*, 334 U.S. 304, 306 (1948).

[19] *United States v. O'Dell*, 320 F.3d 674, 679 (6th Cir. 2003).

[20] *United States v. Husband*, 312 F.3d 247, 250-51 (7th Cir. 2002); *see also United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) ("The mandate rule . . . forecloses relitigation of issue expressly or *impliedly* decided by the appellate court") (citation and internal quotation marks omitted) (emphasis in original).

[21] *Husband*, 312 F.3d at 250.

[22] *Ben Zvi*, 242 F.3d at 95 (citations omitted).

[23] Oral argument at 25:27.

We find no Supreme Court or CAAF precedent on point. We agree, however, with the several appellate courts that have concluded that challenges to jurisdiction are always permitted, even when that court's review is otherwise limited by a superior court's mandate.[24] Jurisdiction may be contested at any time in a proceeding because a lack of jurisdiction deprives a court of taking any action at all.[25]

Having concluded that we may entertain the government's jurisdictional argument, we have no trouble determining that we have jurisdiction in this case. Article 66(b)(1), UCMJ gives us authority to review cases in which the sentence, as approved, extends to death, a punitive discharge, or confinement for one year or more. The convening authority approved a sentence that included twenty-four months of confinement and a bad-conduct discharge. We have jurisdiction in this case.

## C. The Government's Request For a New Convening Authority's Action

After the members adjudged the sentence in this case, the trial counsel reported the results of trial to the convening authority. Her report was consistent with the military judge's interpretation of the findings and the members' findings worksheet. The "Report of Results of Trial" indicates that the members found the appellant "[g]uilty of touching the penis of Airman T.K. with his hand when he reasonably should have known that . . . Airman T.K. was otherwise unaware that the sexual contact was occurring."[26] In his recommendation to the convening authority, the force judge advocate informed the convening authority that the trial counsel's account "accurately reflects the charges, findings, and sentence adjudged."[27] The convening authority did not explicitly approve the members' findings in his action. His court-martial order did indicate, however, that the appellant stood convicted of committing

---

[24] *See, e.g., Al Bahlul v. United States*, 374 F. Supp. 3d 1250, 1259 (C.M.C.R. 2019) (holding that Court of Military Commission Review may consider new challenge to its jurisdiction on remand from superior court); *United States v. Adesida*, 129 F.3d 846, 850 (6th Cir. 1997) (holding that unraised jurisdictional claim could be considered after remand).

[25] *Id.*

[26] Report of Results of Trial In Case Of *United States v. Aviation Ordnanceman Airman Jeffrey D. Sager, U.S. Navy*, of 29 Jan 2014.

[27] Force Judge Advocate's Recommendation of 8 Sep 2014 at 1.

a sexual contact on Airman T.K. while he was "otherwise unaware" that the sexual contact was occurring.[28]

When this case was first before us, the appellant alleged that the force judge advocate's recommendation was erroneous and asked for a new post-trial process. The government disagreed. Now for the first time on reconsideration of this remand, the government argues that the convening authority's action does not reflect the members' findings and that we should remand for a new action. The thrust of the government's argument is that the members announced a general verdict, and that to the extent the military judge, the trial counsel, the force judge advocate, and the convening authority relied on the findings worksheet to arrive at more particularized findings, the reliance was error.

The mandate rule prevents us from reaching this issue. The government did not object to the military judge's instructions when they were given. Nor did it object to the military judge's "publi[cation]" of the "entire verdict" clarifying the members' announcement.[29] Trial counsel's report on results of trial listed the members' finding as specifically a finding that the appellant had assaulted Airman T.K. while he was "otherwise unaware that the sexual contact was occurring."[30] The convening authority concurred in this assessment, as reflected in the court-martial order. Before us on initial appeal, the government did not argue that the court-martial order did not correctly reflect the members' verdict and even opposed the appellant's request for a new post-trial action. The government failed to raise this argument before the CAAF. Unsurprisingly, the CAAF, like the trial counsel and the convening authority, found that the appellant had been convicted of committing a sexual contact while Airman T.K. "was otherwise unaware that the sexual act was occurring" and endorsed the court-martial order as accurately reflecting the members' finding.[31] The government did not ask the CAAF to reconsider. Because the government could have but did not raise this issue earlier in this litigation, it is waived and thus not remanded.[32] We may not entertain it now and stay within our mandate.

---

[28] General Court-Martial Order No. 3-14 of 19 Sep 2014.

[29] Record at 1254.

[30] Report of Results of Trial at 2.

[31] *Sager II*, 76 M.J. at 160.

[32] *Husband*, 312 F.3d at 250.

Even if we were to accept the government's contention that it litigated this issue before the CAAF, we would still find the issue to be outside the scope of our mandate. To the extent the finding in this case was in dispute, the dispute was resolved by the CAAF in favor of the finding promulgated by the convening authority in the court-martial order. We must consider the remanded issues in a manner "consistent with [the CAAF's] opinion."[33] We are not at liberty to disturb this aspect of the CAAF's opinion.

## D. The Members' Voting Procedure

During the course of our review on remand, we noted that the military judge had directed the members to hold separate (presumably secret) ballots on the two theories of guilt concerning the appellant's knowledge: whether the appellant knew or reasonably should have known that Airman T.K. was unaware of the sexual contact at issue. Although the military judge's instructions on the voting procedure were not clear, we were concerned that a members panel following the military judge's instructions might have held separate secret ballots on the elements of this specification. In our first opinion, we disapproved the sole guilty finding, which obviated the need to address this issue. On reconsideration, however, we specified the issue.

Based on our resolution of the case, this issue is moot. It is also beyond the CAAF's mandate. We will not decide this specified issue.

## E. Factual Sufficiency and Application of *Green v. United States*

We continue to find the specification factually insufficient for the reasons stated in our opinion of 31 January 2018. We also continue to find that *Green v. United States* applies to this case in the same way and for the same reasons we articulated in that opinion.

## F. Lesser Included Offenses

The government concedes that if we decline to return this case to the convening authority for new post-trial processing, we may not affirm any lesser included offenses. We agree with this concession.

---

[33] *Sager II*, 76 M.J. at 162.

## III. CONCLUSION

The findings and sentence are **DISAPPROVED**. The charge and specification are **DISMISSED**.

Senior Judge TANG and Senior Judge HITESMAN concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court